**MOKI MAC RIVER EXPEDITIONS,**
Petitioner,

v.

**Charles DRUGG and Betsy Drugg, Individually, and as Representatives of the Estate of Andrew Patrick Drugg, Respondents.**

No. 04–0432.

Supreme Court of Texas.

Argued Nov. 17, 2005.

Decided March 2, 2007.

E. Thomas Bishop, Alexander N. Beard and Stephanie Ann Finch, Bishop & Hummert, P.C., Dallas, for Petitioner.

Steven E. Aldous, Michael Braden and Robert Ray Varner Jr., Braden, Varner & Aldous, P.C., Dallas, for Respondent.

Douglas Alexander, Alexander Dubose Jones & Townsend, LLP, Austin, for Amicus Curiae.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice BRISTER, Justice GREEN, and Justice WILLETT joined.

A Texas court may assert specific jurisdiction over an out-of-state defendant if

the defendant's contact with this state is purposeful and the injury arises from or relates to those contacts. In this wrongful-death case against a Utah-based river-rafting outfitter, the defendant contends the plaintiff's death on a Grand Canyon hiking trail did not arise from or relate to its instate commercial activities so as to establish specific jurisdiction over it in Texas. We agree. Accordingly, we reverse and remand the case to the court of appeals to determine whether general jurisdiction exists.

## I. Background

Charles and Betsy Drugg's thirteen-year-old son, Andy, died on a June 2001, river-rafting trip in Arizona with Moki Mac River Expeditions, a Utah-based river-rafting outfitter. Moki Mac did not directly solicit the Druggs to participate in the trip. Instead, the Druggs learned about Moki Mac's excursions from a fellow Texas resident, Annie Seals, who had contacted the company regarding a rafting trip in the Grand Canyon. There was no space available for her at that time, but Seals's contact information was placed on Moki Mac's computerized mailing list so that she would automatically receive a brochure for the 2001 season when it became available. Moki Mac subsequently sent two brochures to Seals in Texas detailing pricing and schedules for upcoming excursions. Seals informed Moki Mac of the interest of several others in Texas with whom she shared the literature, including Andy and members of his family.

Betsy Drugg reviewed the brochures and information from Moki Mac's website. After corresponding with Moki Mac representatives from her home in Texas, Betsy ultimately decided to send Andy on the rafting trip. Andy's grandmother sent Moki Mac an application and payment for herself and Andy. As was its practice, Moki Mac sent a letter confirming payment to the Druggs' home in Texas along with an acknowledgment-of-risk and release form, which the company requires participants to sign as a prerequisite to attendance. Both Andy and his mother signed the form and returned it to Moki Mac.

The Druggs allege that on the second day of Andy's fourteen-day trip, Moki Mac guides led the group up an incline on a trail that narrowed around and was obstructed by a large boulder. The guides were positioned at the head and rear of the group, but no guide was present near the boulder. As Andy attempted to negotiate the boulder-blocked path, requiring him to lean back while attempting to cross a very narrow ledge, he fell backwards approximately fifty-five feet and was fatally injured.

The Druggs filed suit in Texas for wrongful death due to Moki Mac's negligence and for intentional and negligent misrepresentation.[1] The trial court denied Moki Mac's special appearance and the court of appeals affirmed on the basis of specific jurisdiction, holding that the Druggs' misrepresentation claim arose from, and related to, Moki Mac's purposeful contacts with Texas. 2004 WL 100389. Because the court of appeals found specific jurisdiction, it did not consider whether general jurisdiction was proper. We granted Moki Mac's petition for review to consider the extent to which a claim must "arise from or relate to" forum contacts in

---

1. The Druggs also claimed Moki Mac breached its agreement to provide the safety measures represented in its materials. Because the Druggs did not argue their breach-of-contract claim in the court of appeals and do not do so in their briefs to this Court, we only address the Druggs' wrongful-death claim.

order to confer specific jurisdiction over a nonresident defendant.[2]

## II. Jurisdiction

■ As a threshold matter, the Druggs contend we do not have jurisdiction over Moki Mac's interlocutory appeal in this case. Generally, a court of appeals' decision in an interlocutory appeal is final. TEX. GOV'T CODE § 22.225(b)(3). When, however, the court of appeals holds differently from a prior decision of another court of appeals, this Court, or the United States Supreme Court, we have jurisdiction to resolve the disagreement or conflict. TEX. GOV'T CODE §§ 22.001(a)(1), (2) and 22.225(c); *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675 (Tex.2002). Moki Mac contends the court of appeals' decision in this case conflicts, *inter alia,* with *Laykin v. McFall,* 830 S.W.2d 266 (Tex.App.-Amarillo 1992, orig. proceeding). There, the court of appeals held that a Texas court could not assert jurisdiction over an out-of-state defendant in a suit by a Texas resident alleging fraud and conversion because the "focal point" of the allegedly tortious activity and the plaintiff's damages did not lie in Texas. *Id.* at 270. In this case, in contrast, the court of appeals held that the Texas court could assert jurisdiction without regard to the likely focus of the parties' efforts in the underlying lawsuit. 2004 WL 100389, at *4. We have jurisdiction to resolve the conflict in this interlocutory appeal. TEX. GOV'T CODE § 22.001(a)(2).

## III. *In Personam* Jurisdiction

■ The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Am. Type Culture Collection*

*v. Coleman,* 83 S.W.3d 801, 807 (Tex.2002). The nonresident defendant then assumes the burden of negating all bases of jurisdiction in those allegations. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). Because the question of a court's exercise of personal jurisdiction over a nonresident defendant is one of law, we review a trial court's determination of a special appearance *de novo. Id.* at 794. When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, we infer "all facts necessary to support the judgment and supported by the evidence . . . ." *Id.* at 795.

■ Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). Our long-arm statute describes what, "[i]n addition to other acts," may constitute doing business in this state. TEX. CIV. PRAC. & REM. CODE § 17.042. Pertinent to this case are the first two subsections, which provide that a nonresident does business in Texas if it:

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; [or]
>
> (2) commits a tort in whole or in part in this state;

*Id.* § 17.042(1), (2). The Druggs' negligent and intentional misrepresentation claims based on Moki Mac's brochures and release form satisfy the doing-business requirement for jurisdiction under the plain

---

**2.** We received an amicus brief supporting Moki Mac's position from Grand Canyon Outfitters Association and America Outdoors.

language of the statute. But the exercise of jurisdiction under the statute must be consistent with federal and state constitutional guarantees of due process. *See Schlobohm,* 784 S.W.2d at 356.

■ We have said that the long-arm statute's broad doing-business language allows the statute to "reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991); *see also Schlobohm,* 784 S.W.2d at 357; *U-Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977). Thus, the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations. *Am. Type Culture Collection,* 83 S.W.3d at 806; *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996); *Schlobohm,* 784 S.W.2d at 357.

■ Federal due-process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant. *See Guardian Royal,* 815 S.W.2d at 226. Personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with " 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant " 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (quoting *Int'l Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154); *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005).

■ We have recently explained that there are three parts to a "purposeful availment" inquiry. *Michiana,* 168 S.W.3d at 784–85. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* at 785. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.; see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 n. 18, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Thus, "[s]ellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." *Michiana,* 168 S.W.3d at 785 (quoting *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174). Finally, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Michiana,* 168 S.W.3d at 785. In contrast, a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174.

■ A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction. *BMC Software,* 83 S.W.3d at 795–96. If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts. *Id.* at 796; *CSR Ltd.,* 925 S.W.2d at 595. In contrast, when specific jurisdiction is alleged, we focus the minimum-contacts analysis on the "relationship among the defendant, the forum[,] and the

litigation." *Guardian Royal,* 815 S.W.2d at 228 (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Schlobohm,* 784 S.W.2d at 357). Specific jurisdiction is established if the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. 1868; *see also CSR Ltd.,* 925 S.W.2d at 595. The United States Supreme Court has provided relatively little guidance on the "arise from or relate to" requirement, nor have we had occasion to examine the strength of the nexus required to establish specific jurisdiction.

## IV. Jurisdictional Analysis

The Druggs assert that Moki Mac established sufficient minimum contacts with Texas by making material misrepresentations to them here, upon which they relied, regarding the nature of the services that would be provided on its trips. The wrongful death of their son, the Druggs argue, arose from or related to the fact that Moki Mac's services did not meet the standards it represented in Texas. Moki Mac's principal argument is that there is an insufficient nexus between any alleged misrepresentations that it made in Texas and Andy's wrongful death in Arizona to satisfy jurisdictional due process. According to Moki Mac, Andy's death might have arisen out of or related to alleged negligence that occurred in Arizona, but it had no meaningful connection to Moki Mac's alleged misrepresentations in Texas.

For a Texas forum to properly exercise specific jurisdiction in this case, (1) Moki Mac must have made *minimum* contacts with Texas by purposefully availing itself of the privilege of conducting activities here, and (2) Moki Mac's liability must have arisen from or related to those contacts. *Am. Type Culture Collection, Inc.,*

83 S.W.3d at 806. Before deciding whether Moki Mac's liability arose from or related to its forum contacts, we must first examine the nature of those contacts and whether Moki Mac purposefully availed itself of the privilege of conducting business here. *See Michiana,* 168 S.W.3d at 784–85.

### A. Purposeful Availment

A nonresident defendant that directs marketing efforts to Texas in the hope of soliciting sales is subject to suit here for alleged liability arising from or relating to that business. *Id.,* 168 S.W.3d at 785. In *Michiana,* we concluded that a single product sale stemming from a single phone call initiated from Texas to a nonresident defendant was not a purposeful contact sufficient to satisfy the due-process minimum-contacts test because the seller did not purposefully direct marketing efforts here to solicit sales. *Id.* at 781, 785–86. In that case, Holten, a Texas resident, called Michiana, the nonresident defendant, to purchase an RV manufactured outside of Texas, which Michiana delivered to Texas entirely at Holten's expense. *Id.* at 784. Michiana did not advertise in Texas and undertook no affirmative efforts to solicit business here. *Id.* We held that the alleged commission of a tort by making misrepresentations during a phone call initiated by Holten was insufficient, by itself, to establish jurisdiction. *Id.* at 791–92. Such a test, we reasoned, would improperly focus the purposeful-availment analysis on the form of the action chosen by the plaintiff rather than on the defendant's efforts to avail itself of the forum. *Id.* at 791. We also held that, standing alone, delivery of the single RV to Texas to accommodate Holten was a similarly deficient basis for jurisdiction. *Id.* at 786–88.

The United States Supreme Court has recognized that a nonresident

who places products into the "stream of commerce" with the expectation that they will be sold in the forum state is subject to the forum's jurisdiction. *World–Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. 559. Although the Court has also stated that a single contact can support jurisdiction if that contact creates a "substantial connection" with the forum, jurisdiction cannot be established where the contact creates only an " 'attenuated' affiliation with the forum." *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. 559). Indeed, in *World–Wide Volkswagen*, the Court held that a New York dealership that did not advertise or solicit business in Oklahoma was not subject to suit there simply because it sold a car to New York residents in New York who "happened to suffer an accident while passing through" Oklahoma. *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. 580. The Court reasoned that this one occurrence was mere fortuity and too attenuated to support jurisdiction, given the dealership's complete lack of affiliation with Oklahoma. *Id.* Similarly, Michiana's single contact with Texas was too attenuated to support jurisdiction in Texas. Michiana had no control over the point of customer contact that generated the sale and, like the defendant in *World–Wide Volkswagen*, had no say over where the RV would end up. *Michiana*, 168 S.W.3d at 787. Rather, Michiana's sale to Texas resulted from the mere fortuity that Holten happened to reside here, and Holten's unilateral activity could not subject Michiana to specific jurisdiction here. *Id.* at 787.

■ Thus, the mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. Instead, the facts alleged must indicate that the seller intended to serve the Texas market. *CSR Ltd.*, 925

S.W.2d at 595; *see Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). This rule accords with the due-process requirement that a nonresident defendant must take action that is purposefully directed toward the forum state. *See Asahi*, 480 U.S. at 112, 107 S.Ct. 1026. In determining whether the defendant purposefully directed action toward Texas, we may look to conduct beyond the particular business transaction at issue: "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State." *Id.; see also Michiana*, 168 S.W.3d at 786 (stating that Texas "cases appear to follow the 'additional conduct standard' "). Examples of additional conduct that may indicate whether a defendant purposefully availed itself of a particular forum include advertising and establishing channels of regular communication to customers in the forum state. *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026.

■ Unlike in *Michiana*, the evidence in this cases indicates that Moki Mac does intend to serve the Texas market. Moki Mac knowingly sells rafting trips to Texas residents and purposefully directs marketing efforts to Texas with the intent to solicit business from this state. In addition to sending the brochures and release to the Druggs, the evidence shows that Moki Mac regularly advertised in Texas. It has placed advertisements in a variety of nationally circulated publications that have Texas subscribers. Moki Mac also hired public relations firms to target media groups and tour operators, some of whom were located in Texas. In 1996, Moki Mac promoted its trips within Texas by taking out an advertisement in the *Austin Chronicle*. We have said that a nonresident defendant's advertising in local media "in and of itself, is a sufficiently purposeful act that is done in Texas." *Siskind v. Villa*

*Found. for Educ., Inc.,* 642 S.W.2d 434, 436 (Tex.1982).

Moki Mac's efforts to solicit business in Texas, however, go further. It solicited Texas residents through mass and targeted direct-marketing email campaigns. Moki Mac compiled a mailing list by collecting contact information from interested parties either by phone, email, or through the company's website. In addition, Moki Mac obtained a list of potential customers from a commercial source. Both its own mailing list and the commercial mailing list included Texas residents. The company would automatically send brochures and trip information to people who had previously expressed interest in a trip, even in years when that person had not expressed interest. As part of those promotions, Moki Mac offered "a free float" as an incentive to customers who coordinated a group of ten or more. Moki Mac provided this compensation to at least two Texas residents. Moki Mac occasionally provided musicians to accompany float trips free of charge. On one particular trip, Moki Mac permitted a string quartet from Fort Worth to accompany a Texas group on its float trip, free of charge to the musicians. Moki Mac also paid a fee to a travel agency located in Houston, resulting in multiple trips involving Texas residents.

In addition, Moki Mac established channels of regular communication with its customers in Texas. It was Moki Mac's practice to utilize particular customers, who would become *de facto* group leaders, to plan, organize, and promote its trips. Annie Seals was one such contact. By communicating with all of its customers through correspondence with a single group leader, Moki Mac streamlined its reservations process. The company kept these communication channels open; it was Moki Mac's practice to automatically send information regarding new trips, schedules, and prices to those on its mailing list who had been a customer or who had simply expressed interest in a trip within a three-year period.

We stated in *Michiana* that the contacts of "[s]ellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state'" are purposeful rather than fortuitous. *Michiana,* 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Moki Mac's contacts with Texas did not result, as did the defendant's in *Michiana,* from the mere fortuity that the Druggs happened to reside here. Rather, the contacts it had with Texas resulted from additional conduct through which it aimed to get extensive business in or from this state.

Purposeful availment requires that "a defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* at 785. The notion necessarily implies that the nonresident submit to suit in the forum, and that a nonresident may avoid being haled into court in a particular forum by purposefully conducting business so as not to derive benefit or profit from a forum's laws. *Id.* We held in *Michiana* that the defendant did not purposefully avail itself of the benefits and protections of Texas law because it did not regularly sell RVs in Texas, did not design, advertise, or distribute RVs in Texas, and because the single relationship with Holten would end once the sale was consummated. *Id.* at 785–86, 794. Moki Mac, conversely, sought and obtained profit from Texas residents, with whom the company maintained communications, and it derived a substantial amount of its business from Texas. Unlike in *Michiana,* where we characterized a single sale resulting from a single phone call originating from a Texas number as a "dribble," *id.* at 786, the

"stream of commerce" Moki Mac tapped into was significant. There is evidence that, over the preceding five years, between 105 and 128 of Moki Mac's customers (between 7–11%) were from Texas. We have emphasized that mere profit originating from the forum, if unrelated to a contact with the forum, is not purposeful availment. *Id.* at 787–88; *see also World-Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. 559. But Moki Mac's business with Texas residents stems from its marketing and advertising activities purposefully directed at gaining Texas customers, and it thus availed itself of doing business here.

This Court found purposeful availment in a similar case concerning an out-of-state school that sent information to a Texas individual upon his request. *Siskind,* 642 S.W.2d at 435. In *Siskind,* we held that an exercise of personal jurisdiction was proper over a school for troubled children located in Arizona. *Id.* at 435. Siskind paid tuition for his son to attend Villa with the understanding from the school's brochures and Siskind's modified enrollment contract that he would be reimbursed if his son left during the school year. *Id.* Villa expelled Siskind's son, but when Villa refused to refund the tuition, Siskind sued the school in Texas for breach of contract, misrepresentation, and violation of the Texas Deceptive Trade Practices Act. *Id.* at 435–36. A significant number of Villa's students were Texas residents, and the school advertised in the El Paso, Houston, and Lubbock telephone directories as well as solicited business in a number of national publications that were circulated in Texas. *Id.* at 435. We held that Villa's advertisements, "in conjunction with its practice of mailing informational packets, applications for admission, invitations to re-enroll, and enrollment contracts to Texas residents," indicated that the school had affirmatively sought business in Texas. *Id.* at 436. Here, Moki Mac not only sent bro-

chures and release forms to the Druggs in Texas, it also engaged in additional conduct demonstrating that, like the defendant in *Siskind,* it actively solicited business in Texas.

We conclude that Moki Mac had sufficient purposeful contact with Texas to satisfy the first prong of jurisdictional due process. But purposeful availment alone will not support an exercise of specific jurisdiction. Specific-jurisdiction analysis has two co-equal components. For specific-jurisdiction purposes, purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts. Moki Mac contends there was an insufficient nexus between Andy's injuries and Moki Mac's contacts with Texas to establish specific jurisdiction, an argument to which we now turn.

### B. Relatedness Requirement

The "arise from or relate to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum. To support specific jurisdiction, the Supreme Court has given relatively little guidance as to how closely related a cause of action must be to the defendant's forum activities. In assessing the relationship between a nonresident's contacts and the litigation, most courts have focused on causation, but they have differed over the proper causative threshold. *See Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 714 (1st Cir.1996) (discussing various causative approaches). Some courts have pursued an expansive but-for causative approach, others have adopted a restrictive relatedness view requiring forum contacts to be relevant to a necessary element of proof, and some have applied a sliding-scale analysis that at-

tempts to strike a balance between the two. *See* Mark M. Maloney, *Specific Jurisdiction and the "Arise From or Relate to" Requirement ... What Does it Mean?*, 50 WASH. & LEE L.REV. 1265, 1276, 1299 (1993). Each approach has proponents and detractors, for the reasons we examine below.

### 1. "But–For" Relatedness

In *Helicopteros Nacionales de Colombia v. Hall*, the Supreme Court evaluated a Colombian corporation's limited contacts with Texas and decided they were not sufficiently continuous and systematic to support general jurisdiction over the defendant in Texas. 466 U.S. at 418–19, 104 S.Ct. 1868. The Court did not reach specific jurisdiction because the parties had conceded that the plaintiffs' claims did not arise from or relate to the defendant's activities in Texas. *Id.* at 415–16, 104 S.Ct. 1868. Justice Brennan, though, dissented, espousing a broad "but-for" approach to relatedness, and courts that have applied that test have generally relied on his view. *Id.* at 427–28, 104 S.Ct. 1868.

Courts that support the but-for approach have said that a cause of action arises from or relates to a defendant's forum contacts when, but for those contacts, the cause of action would never have arisen. *See Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *see also Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n. 21 (5th Cir.1981) (holding that a "contract [was] a but for causative factor" for the tort suit); *cf. Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir.1988) (interpreting "arising out of" language in Michigan's long-arm statute and concluding that alleged discrimination would not have occurred but for the defendants' contacts with the forum). Rather than considering only isolated contacts that relate to a specific element of proof or the proximate cause of injury, the but-for analysis considers jurisdictional contacts that occur over the "entire course of events" of the relationship between the defendant, the forum, and the litigation. *See Shute*, 897 F.2d at 384.

As the sole jurisdiction to explicitly adopt the but-for test, the Ninth Circuit Court of Appeals has been its staunchest advocate, and *Shute's* progeny have generally demonstrated the circuit's continuing support. *Nowak*, 94 F.3d at 714 (noting the Ninth Circuit as "the most forceful defender of the 'but for' test"); *see Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995); *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir.1995); *but see Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir.1995) (noting that "[t]he authority of our decision in *Shute* is questionable"). Applying the but-for test, the *Shute* court held that a passenger's personal injuries suffered aboard a cruise ship arose out of the nonresident cruise line's contacts with Washington because, but for the cruise line's advertisements there, the passenger would not have purchased a ticket and boarded the ship. *Shute*, 897 F.2d at 386. The cruise line advertised in local media and sent brochures to the state. *Id.* at 379. The court reasoned that, when a defendant demonstrates "continuing efforts to solicit business in the forum state," whether a cause of action arises from those efforts must be viewed over the entire course of events. *Id.* at 385–86. The court did not limit its relatedness analysis to the passenger's reservation contract, but instead analyzed the range of the cruise line's solicitation activities. *Id.* at 385–86.

The Fifth Circuit appeared to apply relatedness in a similarly expansive manner in *Prejean*, 652 F.2d at 1270. There, the spouses of passengers who died in a plane crash brought a wrongful-death action in

Texas against, among others, an Algerian oil company that chartered the flight. *Id.* In reversing the trial court's dismissal for want of personal jurisdiction and remanding for further factual inquiry, the Fifth Circuit stated that, assuming the defendant had chartered the plane, the wrongful-death suit would arise from that charter because the charter contract would be a but-for causative factor for the tort of wrongful death. *Id.*

Several justifications have been posited for the but-for approach. *See Shute,* 897 F.2d at 385. In *Shute,* the court explained that the but-for test preserves the specific-jurisdiction requirement that there be a nexus between the cause of action and the defendant's activities in the forum. *Id.* At the same time, the court opined, the expansive approach is more fundamentally fair because it does not allow a defendant to engage in significant purposeful activities in the forum yet still avoid jurisdiction when the relationship of the cause of action to those activities is tenuous. *Id.* at 385–86.

On the other hand, the but-for approach has been widely criticized for the expanse of its seemingly unlimited jurisdictional

reach: "[a] 'but for' requirement ... has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *Nowak,* 94 F.3d at 715; *see also* Lea Brilmayer, *Related Contacts and Personal Jurisdiction,* 101 HARV. L.REV. 1444, 1462 (1988) (criticizing the but-for test for its limitless reach). Although the *Shute* court posited that the required reasonableness inquiry would act as a check on the but-for test's expansiveness, commentators have questioned the efficacy of the reasonableness safeguard, calling it "highly deferential." *See, e.g.,* Maloney, *supra* at 1298.

Few courts beyond the Ninth Circuit have adopted the but-for approach to relatedness. Specifically, both the Fifth and Sixth Circuits have signaled a movement away from such a broad test.[3] We agree with those courts and commentators who view the but-for test as too broad and judicially unmoored to satisfy due-process concerns.

### 2. Substantive Relevance/Proximate Cause

Far more structured than the but-for approach is the restrictive view of related-

---

3. *See Felch v. Transportes Lar–Mex SA DE CV,* 92 F.3d 320, 324 (5th Cir.1996) (finding no specific jurisdiction over a Mexican trucking company that was sued in Texas when a truck hit the plaintiff's mother's vehicle on a Mexican highway); *Kelly v. Syria Shell Petroleum Dev. B. V.,* 213 F.3d 841, 855–56 (5th Cir. 2000) (concluding that Syrian oil companies were not amenable to specific jurisdiction in Texas because the wrongful-death claims of workers killed in Syria were not closely related to the companies' recruiting activities in Texas); *Gorman v. Grand Casino of La., Inc.-Coushatta,* 1 F.Supp.2d 656, 658 (E.D.Tex. 1998) (holding plaintiff's claim of sexual assault by a casino employee did not support specific jurisdiction because the claim did not arise out of the casino's extensive advertising in Texas but arose from the casino's Louisiana operations); *Luna v. Compania Panamena De Aviacion, S.A.,* 851 F.Supp. 826, 832

(S.D.Tex.1994) (holding no specific jurisdiction in Texas because plaintiff's death in a plane crash over Panama did "not result from the fact that she purchased the ticket for her airline travel in Texas"); *Kervin v. Red River Ski Area, Inc.,* 711 F.Supp. 1383, 1389 (E.D.Tex.1989) (holding plaintiffs could not assert specific jurisdiction over nonresident ski resort because their negligence claim did not arise out of its advertising contacts with Texas but arose as a result of the resort's alleged negligence in failing to maintain safe premises in New Mexico); *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1091 (6th Cir.1989) (moving away from the court's previous emphasis on a "made possible by" interpretation of the arise from requirement to a focus on the cause of action having a "substantial connection" to the defendant's in-state activities).

ness known as "substantive relevance." As the name implies, this test requires forum-related contacts to be substantively relevant, or even necessary, to proof of the claim. *See Tecre Co. v. Buttonpro, Inc.,* 387 F.Supp.2d 927, 933 (E.D.Wis.2005) (citing *Marino v. Hyatt Corp.,* 793 F.2d 427, 430 (1st Cir.1986)). One iteration of this standard is known as the "proximate cause" test, reasoning that a contact that is the proximate or legal cause of an injury is substantively relevant to a cause of action that arises from it. The First, Second, and Eighth Circuits appear to have followed this approach. *See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992); *Pizarro v. Hoteles Concorde Int'l, C.A.,* 907 F.2d 1256, 1259–60 (1st Cir.1990); *Marino,* 793 F.2d at 429–30; *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1281 (8th Cir.1991); *Pearrow v. Nat'l Life & Accident Ins. Co.,* 703 F.2d 1067, 1068–69 (8th Cir.1983); *Gelfand v. Tanner Motor Tours,* 339 F.2d 317, 321–22 (2d Cir.1964).

■■■ Proximate cause requires the defendant's conduct to be both the cause in fact and the foreseeable cause of injury. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). Under this more stringent relatedness standard, the purposeful contact that is a proximate cause of injury is an essential liability element and is thus substantively relevant to a plaintiff's claim of harm.

In *Marino,* for instance, a Massachusetts resident brought suit in her home state against Hyatt, a Delaware corporation, for injuries sustained when she slipped in the bathtub of her Hawaii hotel room. *Marino,* 793 F.2d 427. Applying the relatedness requirement restrictively, the court concluded that Marino's claim did not "arise from" any business that Hyatt transacted in Massachusetts. *Id.* at

431. The court reasoned that "[the] plaintiffs' advance reservation agreement with Hyatt would hardly be an important, or perhaps even a material, element of proof in [the] slip and fall case," and emphasized that to accept the plaintiffs' argument "would be to render the 'arising from' requirement ... a virtual nullity." *Id.* at 430; *see also Pizarro,* 907 F.2d at 1259–60 (holding that personal injuries sustained in an Aruban hotel did not arise out of or result from advertisements in Puerto Rico). Courts in the Third and Tenth Circuits have similarly applied the substantive-relevance/proximate-cause standard. *See Wims v. Beach Terrace Motor Inn, Inc.,* 759 F.Supp. 264, 267–69 (E.D.Pa.1991) (holding that the causal link between brochures the Inn sent to Pennsylvania and the injury sustained at the Inn in New Jersey was "simply too attenuated to say that the injury arose from Beach Terrace's activities in the Commonwealth of Pennsylvania"); *Dirks v. Carnival Cruise Lines,* 642 F.Supp. 971, 975 (D.Kan.1986) (finding the connection between the cruise ship operator's negligent preparation of food on board ship in California and its acts of soliciting passengers and sending tickets to Kansas too tenuous to support jurisdiction).

In *Gelfand,* the Second Circuit implicitly rejected the but-for approach on facts largely similar to those before us. 339 F.2d at 321–22. There, the Gelfands sued a tour bus company for injuries sustained during a motor vehicle crash. *Id.* at 318. The court held that the sale of bus tickets in New York was an insufficient basis to establish personal jurisdiction over the non-resident defendant because the claim did not arise from the sale. *Id.* at 321–22; *see also Reich v. Signal Oil & Gas Co.,* 409 F.Supp. 846, 852 (S.D.Tex.1974) (concluding that a contract signed in Texas to build a helicopter that crashed in Ghana, killing

two oil rig workers, was too tenuous a contact to say that the tort arose from it).

Although Moki Mac urges us to follow the substantive-relevance approach, we have generally eschewed pinning jurisdictional analysis on the type of claim alleged. *See, e.g., Michiana,* 168 S.W.3d at 791–92. In *Michiana,* we warned against the dangers of the plaintiff's pleadings driving the analysis, stating that such an approach "shifts a court's focus from the relationship among the *defendant,* the forum, and the litigation to the relationship among the plaintiff, the forum ... and litigation." *Id.* at 790 (emphasis in original) (internal citations omitted). We reject a categorical approach that runs the danger of posing too narrow an inquiry. Although ostensibly imbued with a bright-line benefit, in practice it would require a court to delve into the merits to determine whether a jurisdictional fact is actually a legal cause of the injury. *See* Maloney, *supra* at 1290. Moreover, ease of application should not overshadow the principal constitutional due-process inquiry, which is whether the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). We note, too, that the substantive-relevance/proximate-cause standard is more stringent than the Supreme Court has, at least thus far, required. *Helicopteros,* 466 U.S. at 415 n. 10, 104 S.Ct. 1868.

### 3. "Sliding Scale" Relationship

Attempting to moderate the seemingly categorical effects of the but-for and substantive-relevance tests, some commentators have espoused, and a few courts have adopted, a "sliding scale" approach that examines the relationship between forum contacts and the litigation along a continuum. Under this view, as the extent of forum contacts goes up, the degree of relatedness to the litigation necessary to establish specific jurisdiction goes down, and *vice versa.* Maloney, *supra* at 1299–1300. As articulated by the Supreme Court of California, "as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend." *Vons Cos. v. Seabest Foods, Inc.,* 14 Cal.4th 434, 58 Cal.Rptr.2d 899, 926 P.2d 1085, 1094 (1996); *see also Davis v. Baylor Univ.,* 976 S.W.2d 5, 9 (Mo.Ct.App.1998); William M. Richman, *Jurisdiction in Civil Actions,* 72 CAL. L.REV. 1328, 1338-40 (1984) (review essay).

Although the sliding scale jurisdictional analysis studiously avoids the extremes that the other two relatedness tests present, it too presents a number of problems. Most significantly, deciding jurisdiction based on a sliding continuum blurs the distinction between general and specific jurisdiction that our judicial system has firmly embraced and that provides an established structure for courts to analyze questions of *in personam* jurisdiction. *See* Maloney, *supra* at 1299–1300. Removing the jurisdictional analysis from these judicial underpinnings allows general and specific jurisdiction "to melt together in the middle ... severely weaken[ing] the defendant's ability to anticipate the jurisdictional consequences of its conduct." Linda Sandstrom Simard, *Meeting Expectations: Two Profiles for Specific Jurisdiction,* 38 IND. L.REV. 343, 366 (2005). In sum, "this tradeoff does not fulfill the underlying goals of either general or specific jurisdiction" and "may raise far more difficult questions than it resolves." *Id.* at 366–67.

For these reasons, we decline to adopt the sliding-scale approach to relatedness.

### 4. Substantial Connection to Operative Facts

As we have said, the but-for relatedness test is too broad and conceptually unlimited in scope, the substantive-relevance/proximate-cause test poses too narrow an inquiry, and the sliding-scale analysis conflates the fundamental distinction between general and specific jurisdiction that is firmly embedded in our jurisprudence. In light of these concerns, some courts have applied alternative approaches, requiring that a cause of action "lie in the wake of the [defendant's] commercial activities" in the forum, *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215–16 (7th Cir.1984), or that the forum contacts be "critical steps in the chain of events that led to the [injury]," *In re Oil Spill by Amoco Cadiz*, 699 F.2d 909, 915–16 (7th Cir.1983). The Sixth Circuit has generally applied a test that falls somewhere between "proximate cause" and "but-for," requiring a "substantial connection" between the defendant's contacts and the plaintiff's claim to warrant the exercise of specific jurisdiction. *See WEDGE Group, Inc.*, 882 F.2d at 1091 (6th Cir.1989); *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 384 n. 27 (6th Cir.1968). In *WEDGE Group, Inc.*, the court explained that the specific jurisdiction's relatedness element "does not require that the cause of action formally 'arise from' defendant's contacts with the forum [but instead requires] that the cause of action, of whatever type, *have a substantial connection with* the defendant's in-state activities." *WEDGE Group Inc.*, 882 F.2d at 1091 (emphasis in original) (quoting *Southern Mach. Co.*, 401 F.2d at 384 n. 27).

The Supreme Court has yet to explicate the degree of relatedness necessary to support specific jurisdiction over a nonresident defendant. However, in *Rush v. Savchuk*, the Court did consider the relation between forum contacts and the litigation in a case filed in Minnesota for personal injuries arising from an Indiana automobile accident. 444 U.S. 320, 324, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). The plaintiff claimed jurisdiction was proper in Minnesota because the defendant's insurance company did business there, and the insurer's obligation to defend and indemnify its insured in the accident litigation was inevitably the focus that would determine the victim's rights and obligations. *Id.* at 327–28, 100 S.Ct. 571. Holding that the insurance company's contacts could not be imputed to the defendant for the purpose of establishing jurisdiction, the Court concluded there were not "significant contacts between the litigation and the forum" because "the insurance policy is not the subject matter of the case ... nor is it related to the operative facts of the negligence action." *Id.* at 329, 100 S.Ct. 571. The Court concluded that the insurance contract pertained only to the conduct and "not the substance [ ] of the litigation," and therefore the forum's jurisdiction was not affected. *Id.*

■ Our limited jurisprudence similarly suggests a middle ground, more flexible than substantive relevance but more structured than but-for relatedness, in assessing the strength of the necessary connection between the defendant, the forum, and the litigation. *See Guardian Royal*, 815 S.W.2d at 229–33. In *Guardian Royal*, we spoke in terms of a "substantial connection" between the nonresident defendant and Texas arising from purposeful action or conduct directed here. *Id.* at 226 (citing *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. 2174) (stating "[s]o long as it creates

a 'substantial connection' with the forum, even a single act can support jurisdiction"); *see also Shell Compania Argentina de Petroleo, S.A. v. Reef Exploration, Inc.,* 84 S.W.3d 830, 837 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (stating contacts "must have a 'substantial connection' that results in the alleged injuries") (citing *Guardian Royal,* 815 S.W.2d at 226). Considering our own jurisprudence and the Supreme Court's analysis in *Rush,* we believe that for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *See Guardian Royal,* 815 S.W.2d at 229–33; *Rush,* 444 U.S. at 329, 100 S.Ct. 571.

## C. Relatedness of Moki Mac's Contacts

 Betsy Drugg alleges she was induced to send Andy on the rafting trip by Moki Mac's direct solicitation, which included statements made in Moki Mac's brochures and in the release it sent to the Druggs. Specifically, Andy's mother claims she made the decision to send Andy on the trip based on Moki Mac's assurances that "[y]ou don't need 'mountain man' camping skills to participate in one of our trips," children age twelve or above are suited to participate, and "Moki Mac has taken reasonable steps to provide you with appropriate equipment and/or skilled guides." But for these promises, the Druggs claim, they would not have sent Andy on the rafting trip and he would not have fallen on the hiking trail.

Certainly on a river rafting trip safety is a paramount concern, and we accept as true the Druggs' claim that Andy might not have gone on the trip were it not for Moki Mac's representations about safety. However, the operative facts of the Druggs' suit concern principally the guides' conduct of the hiking expedition and whether they exercised reasonable care in supervising Andy. The events on the trail and the guides' supervision of the hike will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question. Only after thoroughly considering the manner in which the hike was conducted will the jury be able to assess the Druggs' misrepresentation claim. In sum, "the [alleged misrepresentation] is not the subject matter of the case ... nor is it related to the operative facts of the negligence action." *Rush,* 444 U.S. at 329, 100 S.Ct. 571. Whatever connection there may be between Moki Mac's promotional materials sent to Texas and the operative facts that led to Andy's death, we do not believe it is sufficiently direct to meet due-process concerns. Analogous cases from other courts support our view.

Federal district courts in Texas have generally held that a nonresident's in-state advertising is insufficiently related to a negligence claim based on personal injury that occurs out of state to support an exercise of specific jurisdiction. In *Kervin v. Red River Ski Area, Inc.,* for example, the plaintiff fell while descending a flight of wooden steps leading to her ski lodge in New Mexico. 711 F.Supp. at 1385. The Kervins sued the ski resort in Texas alleging negligence in failing to maintain safe premises. *Id.* The plaintiffs asserted *in personam* jurisdiction based on the resort's contacts with Texas, which included television and print advertising and mailing brochures to potential customers. *Id.* at 1386. The court determined that *"[i]n personam* jurisprudence has taken a restrictive view of the relationship between causes of action and contacts, seemingly to require virtually a direct link between [the] claim and [the] contacts." *Id.* at 1389. Although the court ultimately deter-

mined that general jurisdiction was proper, it held that specific jurisdiction was not because there was no substantial connection between the resort's advertising in Texas and its negligent maintenance of the stairwell in New Mexico. *Id.*

In *Gorman v. Grand Casino of Louisiana, Inc.-Coushatta,* the plaintiff, a Texas resident, sued a Louisiana casino in Texas claiming that its employee intentionally served her a drink containing Benzodiazepine (one of the "date-rape" drugs) and then made advances to her. 1 F.Supp.2d at 658. The court held that there was an insufficient link between Gorman's sexual-harassment claim and the casino's marketing scheme in Texas to support the exercise of specific jurisdiction, concluding "[b]illboard advertisements of slot machine payouts ... ha[ve] nothing to do with the conduct of that casino's employees." *Id.; see also Luna,* 851 F.Supp. at 832–33 (holding claim involving plaintiff's death in a plane crash over Panama arose not from her ticket purchase in Texas but from alleged negligence in Panama).

Courts in other jurisdictions have similarly addressed the issue, concluding that claims arising out of personal injury that occurs outside the forum do not arise from or relate to a defendant's forum advertising. In *Oberlies v. Searchmont Resort, Inc.,* a Michigan resident visited a Canadian ski resort after seeing the resort's advertisement in a Michigan newspaper. 246 Mich.App. 424, 633 N.W.2d 408, 411 (2001). Claiming she was injured when resort employees negligently loaded her onto a ski lift, the plaintiff filed suit in Michigan. *Id.* The court concluded that the resort's advertising activities in the forum were insufficient to support *in personam* jurisdiction, and that it would violate due process to hale the Canadian resort into a Michigan court:

> [n]otwithstanding defendant's purposeful availment of Michigan business opportunities through its advertising, we are compelled to find that the presence of other factors render the exercise of jurisdiction unreasonable. Simply put, the connection between plaintiff's cause of action [negligence] and defendant's Michigan advertising is so attenuated that it is unreasonable to exercise jurisdiction over defendant....

*Id.* at 416 (internal citations omitted).[4]

Somewhat analogous to advertising cases are those that concern efforts to recruit forum residents. Most courts have held that merely mailing letters and exchanging phone calls in recruitment efforts is insufficient to support specific jurisdiction over nonresidents for claims that arise outside the forum, although some courts have exercised jurisdiction when the defen-

---

**4.** *See also Wims,* 759 F.Supp. at 269 (concluding that the Pennsylvania plaintiff's injuries at a New Jersey motel did not arise from defendant's forum contacts because there was no causal link between the motel's brochures sent to Pennsylvania and the plaintiff's action for "negligent willful, wanton and reckless conduct"); *Coleman v. Chen,* 712 F.Supp. 117, 122 (S.D.Ohio 1988) (holding that a slip-and-fall claim arose not from the defendant's solicitation in Ohio but from the condition of the hotel parking lot outside the forum); *Smith v. Jefferson County Chamber of Commerce,* 683 F.Supp. 536, 538–39 (D.Md.1988), *aff'd without opinion,* 885 F.2d 865 (4th Cir. 1989) (holding that a personal injury claim that occurred at a West Virginia crafts festival did not arise out of the defendant's contacts with Maryland); *Slocum v. Sandestin Beach Resort Hotel, Div. of Beachside # 1 Condo Ass'n,* 679 F.Supp. 899, 901–02 (E.D.Ark. 1988), *appeal dismissed,* 855 F.2d 856 (8th Cir.1988) (holding that the plaintiff's injuries at a Florida resort were not related to the defendant's solicitation in the forum state); *Morse v. Walt Disney World Co.,* 675 F.Supp. 42, 43–44 (D.Mass.1987) (same); *Szakacs v. Anheuser–Busch Cos.,* 644 F.Supp. 1121, 1123–24 (N.D.Ind.1986) (same).

dant physically recruited in the forum. For example, in *Cassell v. Loyola University*, a Florida student who was a resident of Tennessee was recruited to play basketball for a New Orleans university. 294 F.Supp. 622, 622–23 (E.D.Tenn.1968). When the university subsequently refused to grant Cassell a scholarship, he sued for breach of contract in Tennessee. *Id.* at 623. The only connections with the forum were that it was the student's domicile, it was where his father had signed the recruitment contract, and agents of the university had communicated there by mail and telephone. *Id.* The court held that the "asserted cause of action does not arise out of business transacted in Tennessee" and thus there was an insufficient connection between the forum and the litigation to justify personal jurisdiction. *Id.* at 624.[5]

In *Kelly v. Syria Shell Petroleum Development B. V.*, two Texas oil well workers who had contracted their services to Syrian oil companies were killed while performing work in Syria. 213 F.3d at 855. Their families sued for wrongful death in Texas, but the Fifth Circuit held there was no specific jurisdiction over their claims. *Id.* at 844. The court noted that, even assuming the Syrian company possessed minimum contacts with Texas, including signing a contract for the well workers' services, "specific jurisdiction does *not* exist ... because Appellants' claims do *not* arise out of those contacts. Instead, they arise out of alleged tortious acts committed ... in Syria." *Id.* at 855 (emphasis in original).[6]

The Druggs cite our decision in *Siskind* to support their claim that Moki Mac's solicitations in Texas and Andy's death on the Arizona hiking trail are sufficiently related to support specific jurisdiction. *Siskind*, 642 S.W.2d at 437. But the operative facts in *Siskind* that supported liability and related to the defendant's forum contacts differ significantly from those presented here. The school solicited students in Texas through national magazines and local telephone books and the contract between Siskind and the school specifically provided that, if Siskind's son left during the school year, his tuition would be reimbursed. *Id.* at 435–36. When his son was expelled, the school refused to refund Siskind's tuition. *Id.* Siskind sued the school in Texas for the promised refund. *Id.* Under these circumstances, we held there was "a connection between Siskind's claim for breach of contract and Villa's contacts

---

5. In doing so, the court distinguished college athletic recruiting from ordinary commercial activities.

6. *See also Hardnett v. Duquesne Univ.*, 897 F.Supp. 920, 922–24 (D.Md.1995) (holding that the student's negligence claim against the Pennsylvania university for injuries sustained while attending a rock concert there did not "arise out of" the university's forum-related contacts with Maryland which included mailing materials and an acceptance letter to the student's home); *Tung v. Am. Univ. of the Caribbean*, 353 N.W.2d 869, 871–72 (Iowa Ct.App.1984) (holding that employer's forum contacts that included sending two letters and making three telephone calls were not sufficiently related to the plaintiff's claim for breach of an employment contract to support specific jurisdiction); *City of Riverview v. Am.*

Factors, Inc., 77 S.W.3d 855, 858–59 (Tex.App.Dallas 2002, no pet.) (holding that a telephone conversation between a city employee and the company was insufficient to establish minimum contacts with Texas). *Cf. Barile v. Univ. of Va.*, 2 Ohio App.3d 233, 441 N.E.2d 608, 612–15 (1981) (holding that two visits to the forum by university agents for the purpose of recruiting the plaintiff to play football was sufficient to establish *in personam* jurisdiction over the plaintiff's breach of contract claim); *Davis v. Baylor University*, 976 S.W.2d 5, 13–14 (Mo.Ct.App.1998) (holding that the dispatching of agents to the forum state to actively recruit a resident is of a quality and quantity sufficient to support specific jurisdiction for breach of contract and fraudulent misrepresentation claim).

with Texas." *Id.* at 437. Here, however, Moki Mac's statements in its brochures and release do not bear the same direct link to Andy's injury as did Siskind's claim to recover money lost under the contract. Moki Mac's promotional representations, while theoretically related to Andy's injury on the hiking trail in the sense that but for them he might not have been there, are not sufficiently related to the operative facts underlying Andy's injury for which the Druggs seek recovery in wrongful death to sustain the exercise of specific jurisdiction.

This case more closely resembles the situation presented in *Brocail v. Anderson*, 132 S.W.3d 552 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). In that case, Brocail, a former Detroit Tigers baseball player, underwent treatment by a team physician in Michigan. *Id.* at 555. Of his own volition, Brocail moved to his home in Texas during his rehabilitation, and at Brocail's request, his doctor, Anderson, prescribed follow-up treatments that were administered by a healthcare group in Houston. *Id.* at 555–56. Brocail sued Anderson in Texas for medical negligence and fraud related to his physical therapy, and alleged Texas had specific jurisdiction because Anderson had faxed prescriptions to Texas and communicated with the Texas healthcare group regarding Brocail's progress. *Id.* at 558. Brocail also asserted jurisdiction was proper because Anderson had made misrepresentations in Texas by failing to fully disclose the true extent of Brocail's injuries in his forum contacts. *Id.* at 563. The court of appeals held that Brocail's claims did not arise from or relate to any Texas contacts because "Brocail is complaining about a physical injury based on a course of treatment. Any tort occurred in the exercise of medical judgment in prescribing a course of physical therapy in Michigan, not from the commu-

nication of that prescription [to Texas]." *Id.*

Similarly, the injuries for which the Druggs seek recovery are based on Andy's death on the hiking trail in Arizona, and the relationship between the operative facts of the litigation and Moki Mac's promotional activities in Texas are simply too attenuated to satisfy specific jurisdiction's due-process concerns.

## V. Conclusion

We reverse the court of appeals' judgment and remand the case to that court to consider the Druggs' assertion that Moki Mac is subject to general jurisdiction in Texas.

Justice JOHNSON filed a dissenting opinion, in which Justice MEDINA joined.

Justice JOHNSON, joined by Justice MEDINA, dissenting.

Texas' long-arm jurisdiction over non residents reaches as far as the federal constitution allows. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). But, just how far the constitution allows has not been a simple question since *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See* Mark Maloney, *Specific Personal Jurisdiction and the "Arise From or Relate To" Requirement ... What Does It Mean?*, 50 WASH. & LEE L. REV. 1265, 1266–67 (1993). As to a state's exercising in personam jurisdiction over a non resident, federal due process requires "only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316 (quoting *Milliken v.*

*Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Specific jurisdiction over a nonresident defendant comports with federal constitutional due process if the defendant's alleged liability arises from or is related to an activity conducted within the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). It is "the defendant's conduct and connection with the forum" that are critical. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 789 (Tex.2005) *(citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

There is nothing wrong with an enterprise arranging its affairs so that it avoids doing business in or engaging in activities directed toward a particular forum and thereby precludes that forum's exercise of jurisdiction over it. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The key inquiry is whether a defendant *has* so arranged its affairs. If not, then "he should reasonably anticipate being haled into court" in the forum. *Id.* The Supreme Court has not been overly restrictive in its view of federal due process limits on a forum's exercise of jurisdiction over nonresidents that purposefully direct activities toward the forum's residents:

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through applica-

tion of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue.

*Burger King,* 471 U.S. at 477.

Moki Mac is a Utah company which has conducted guided tours in the Grand Canyon for many years. In addition to general advertising and maintaining a website for potential clients to access, Moki Mac's efforts to attract customers include targeting particular persons to whom it sends brochures describing Moki Mac's rafting and hiking trips. Its targeted audience includes persons who previously inquired about or have taken its trips. At and for several years prior to the time reservations were made for Andy's trip in 2001, Moki Mac's targeted audience included Texas residents. As the Court sets out, some of Moki Mac's efforts which were directed toward Texas residents included regular advertising in Texas, hiring public relations firms to target media groups and tour operators in Texas, soliciting Texas residents through mass and targeted direct-mail campaigns, and utilizing particular customers to become *de facto* group leaders to plan, organize and promote Moki Mac trips. Moki Mac also has given discounted trip prices to some Texas clients who brought potential customers to Moki Mac's attention.

Participants on Moki Mac's guided rafting and hiking trips engage in activities and encounter conditions which Moki Mac recognizes pose risks of injury and death. Its brochures and "Visitors Acknowledgment of Risk" form (the VAR agreement) identify certain risks, warn that enumerated risks and "other unknown or unanticipated risks may cause injury or death," and state that Moki Mac has taken reasonable steps to provide "appropriate equipment and/or skilled guides so you can en-

joy an activity for which you may not be skilled." One of the specific dangers warned of was falling during a hike with resulting injury or death. Andy Drugg fell during a hike and was killed.

The Druggs received Moki Mac's brochures from a Texas acquaintance. After reviewing the brochures and corresponding with Moki Mac from Texas, the Druggs decided to allow thirteen-year-old Andy to go on one of the trips. Moki Mac confirmed Andy's reservation and in accordance with its usual procedures forwarded to the Druggs a VAR agreement which Moki Mac required to be signed before persons could take one of their trips. Betsy and Andy signed the agreement in Texas and returned it to Moki Mac. The agreement set out several risks which could be encountered on a Moki Mac trip and specified the possibility of injury or death:

> In consideration of the services of Moki Mac River Expeditions, Inc., their officers, agents, employees, and stockholders, and all other persons or entities associated with those businesses, (hereinafter collectively referred to as "Moki Mac"), I agree as follows: . . .

> I agree to assume responsibility for the risks identified. . . . Therefore, I assume full responsibility for myself, including my minor children, for bodily injury, death, loss of personal property, and expenses thereof as a result of those inherent risks an/or of my negligence in participating in this activity.

> . . .

> [T]his agreement shall be effective and binding upon myself, my heirs, assigns, personal representatives, estate, and all members of my family, including any minors accompanying me.

At its special appearance hearing, Moki Mac's representative testified that Moki Mac considered the VAR agreement to have been effective when and where it was signed by the Druggs—in this case, Texas.

The Court notes that for Texas courts to properly exercise specific jurisdiction over Moki Mac as a non resident, Moki Mac must have had (1) minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here, and (2) liability arising from or related to those contacts. 221 S.W.3d 569. The Court concludes that Moki Mac's contacts with Texas were targeted to a particular audience, were purposeful, not a "mere fortuity," and thus satisfied the first prong of the jurisdictional due process inquiry. *See id.* at 578. However, the Court determines that the Druggs' suit did not "arise from or relate to" Moki Mac's activities in Texas and that the second prong of the due process inquiry was not met.

As part of its analysis the Court references a "restrictive proximate-cause" test used by the First Circuit Court of Appeals. *See Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708 (1st Cir.1996), *cert. denied* 520 U.S. 1155, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997). The *Nowak* facts are analogous to those before us and in my view the opinion sets out a fair and reasonable approach to the relatedness aspect of the jurisdictional question.

Tak How was a Hong Kong corporation which owned a hotel in Hong Kong and had no place of business outside Hong Kong. It had no shareholders, assets, or employees in Massachusetts. It advertised in national and international magazines and listed the hotel in various hotel guides used at travel agencies in Massachusetts. On one occasion it sent direct mail solicitations to former Tak How guests, including previous guests living in Massachusetts. The company employing Mr. Nowak in Massachusetts had an agreement with Tak How for rates when its employees stayed at the hotel. When

its employees went to Hong Kong for business the company booked reservations at the hotel. Mrs. Nowak accompanied her husband to Hong Kong on a business trip and they stayed at the hotel pursuant to reservations made by the company. Mrs. Nowak drowned in the hotel swimming pool. Mr. Nowak and his children sued Tak How in Massachusetts. Tak How removed the case to federal court and the federal district court refused to dismiss for lack of personal jurisdiction. The First Circuit affirmed. In doing so, the court surveyed and discussed the various approaches taken to the due process relatedness issue, just as the Court does in its opinion. The *Nowak* court then noted the First Circuit's reputation as a proponent of the more restrictive "proximate-cause" standard as to the relatedness issue and the importance of foreseeability in the due process analysis: "Foreseeability is a critical component in the due process inquiry, particularly in evaluating purposeful availment, and we think it also informs the relatedness prong." *Id.* at 715 (emphasis added). *See also Burger King,* 471 U.S. at 474 ("[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.") (*quoting World–Wide Volkswagen,* 444 U.S. at 297). The *Nowak* court concluded that adherence to the proximate cause construct in jurisdictional issues should not be so strict as in tort issues:

We see no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional.

When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

. . .

While the nexus between Tak How's solicitation of [Nowak's employer's] business and Mrs. Nowak's death does not constitute a proximate cause relationship, it does represent a meaningful link between Tak How's contact and the harm suffered.

*Id.* at 715–16.

The court then applied further considerations articulated by the Supreme Court as being appropriate to determining if the exercise of personal jurisdiction by a forum over a non resident defendant would be constitutional:

Our conclusion . . . does not end the inquiry. Personal jurisdiction may only be exercised if it comports with traditional notions of "fair play and substantial justice." *International Shoe,* 326 U.S. at 320. Out of this requirement, courts have developed a series of factors that bear on the fairness of subjecting a nonresident to a foreign tribunal . . . as follows: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sover-

eigns in promoting substantive social policies."

*Id.* at 717 (quoting *United Elec., Radio & Mach. Workers v. Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992)); *see Burger King*, 471 U.S. at 477–78. Such an approach properly focuses on and emphasizes the actions of a nonresident defendant that has purposefully directed actions at a forum's residents, and on the reasonable foreseeability to the defendant that its actions will make it amenable to suit in that forum.

While Moki Mac might have a strong *forum non conveniens* argument, *see* TEX. CIV. PRAC. & REM. CODE § 71.051, the facts before us do not present a compelling case that Texas' exercise of *jurisdiction* over Moki Mac would be unreasonable. *See Burger King*, 471 U.S. at 477. Moki Mac's conduct was particularly designed to and did increase the likelihood that Texas residents would respond favorably. Andy Drugg's death occurred while he was engaged in activities integral to the relationship Moki Mac induced by its efforts specifically directed toward Texas residents. Moki Mac should have reasonably foreseen that an injury to a client such as Andy while the client participated in activities integral to the relationship directly produced through Moki Mac's activities directed toward Texas residents would subject Moki Mac to being sued over the injury in Texas. There was a meaningful link between Moki Mac's actions directed toward Texas residents and the Druggs' suit. Accordingly, I would hold that the substance of the Druggs' suit is related to Moki Mac's activities which were purposefully directed toward Texas residents; the second prong of the due process inquiry is satisfied; it is not unreasonable or unfair to Moki Mac for Texas to exercise jurisdiction over Moki Mac as to the Druggs' suit; and subject to a "fair play and substantial justice" analysis, the exercise of jurisdic-

tion by Texas in this case falls within the boundaries of federal constitutional due process requirements. *See Nowak*, 94 F.3d at 715–16.

The court of appeals performed the "fair play and substantial justice" analysis which the Supreme Court has indicated both protects a non resident from improper exercise of jurisdiction by a forum, and yet might allow a lesser showing for the exercise of jurisdiction over a defendant who purposefully directs activities toward the forum. *See Burger King*, 471 U.S. at 477–78 (noting considerations which sometimes "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required"). I agree with the court of appeals' analysis and determination that the exercise of specific jurisdiction over Moki Mac by Texas would not offend traditional notions of fair play and substantial justice. 221 S.W.3d 569.

I would affirm the judgment of the court of appeals.