COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

                                          NO.
02-08-062-CV

 

SOUTHWEST
AVIATION 

SPECIALITIES, L.L.C. AND DAVID C. 

GUZMAN, AN INDIVIDUAL                                                  APPELLANTS

 

                                                      V.

 

WILMINGTON
AIR VENTURES IV, 

INC. AND DELISA AIRCRAFT 

MANAGEMENT, INC.                                                             APPELLEES

 

                                                  ------------

 

             FROM THE 153RD
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

I. Introduction

In three issues, Appellants Southwest Aviation
Specialties, LLC and David C. Guzman appeal the denial of their special
appearances and the evidentiary rulings that the trial court made in support of
that denial.  We affirm.








II. Factual and Procedural Background

This case involves a contract for
aviation-related goods and services between Southwest Aviation Specialities (ASouthwest@) and
Appellees Wilmington Air Ventures IV, Inc. and Delisa Aircraft Management, Inc.
(collectively, AWilmington@).  Wilmington sued Southwest and Guzman,
Southwest=s general manager, both Oklahoma
residents, for breach of contract and deceptive trade practices, among other
claims.  Wilmington alleged in its
original petition that Southwest and Guzman Aattempted
to repair some of the avionics work while [Wilmington=s
aircraft] was at a maintenance facility in Fort Worth, Texas, known as Phazar
Flight Support.@ 
Southwest and Guzman each filed special appearances, which the trial
court denied.

III. Special Appearances

In their first issue, Southwest and Guzman
complain that the trial court erred when it denied their special appearances,
claiming that they negated all bases for personal jurisdiction, specific and
general.  In their second issue, they
argue that the trial court erred when it overruled their objections to
Wilmington=s affidavits in opposition to
the special appearances.  And in their
third issue, Southwest and Guzman complain that the trial court erred when it Adeemed
admitted@ their
objections and responses to Wilmington=s second
request for admissions.








The trial court=s order
denying Southwest=s and Guzman=s
special appearances noted that it granted all parties further time to file
additional pleadings and that, after notice to all parties Aand upon
considering the Defendants= Special
Appearances, the response, the evidence, the pleadings and the arguments of
counsel, the Court is of the opinion that Defendants= Special
Appearances should be denied.@  The record also includes a letter from the
trial court to the parties, dated the same day as the order and enclosed with
the order, stating, AThe Defendants=
objections to the Plaintiffs= Special
Appearance evidence are each denied.@ 

A. Standard of Review








Whether a trial court has personal jurisdiction
over a defendant is a question of law reviewed de novo.  BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 793B94 (Tex. 2002); TravelJungle
v. Am. Airlines, Inc., 212 S.W.3d 841, 845 (Tex. App.CFort
Worth 2006, no pet.); SITQ E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d
638, 644 (Tex. App.CFort Worth 2003, pet.
denied).  The plaintiff bears the initial
burden of pleading sufficient allegations to bring a nonresident defendant
within the provisions of the Texas long‑arm statute.  BMC Software, 83 S.W.3d at 793; TravelJungle,
212 S.W.3d at 845; Reata, 111 S.W.3d at 644.  Wilmington met its initial burden by
asserting in its original petition that Southwest and Guzman, Oklahoma
residents, Aengaged in business in Texas, a
contract made the basis of this dispute was performed, in part, in Texas, and
the Defendants engaged in other wrongful acts in Texas.@  See Tex. Civ. Prac. & Rem. Code
Ann. ' 17.042
(Vernon 2008).  A nonresident defendant
challenging a Texas court=s personal jurisdiction over it
must then negate all jurisdictional bases. 
BMC Software, 83 S.W.3d at 793; TravelJungle, 212 S.W.3d
at 845; Reata, 111 S.W.3d at 644B45.  

B. Deemed Admissions

Southwest and Guzman claim that their objections
and responses to Wilmington=s second
set of requests for admissions were timely filed on December 28, 2007, because
they were Aactually served@ or they
Aactually
received@
Wilmington=s second set of requests for
admissions on November 29, 2007.  Thus,
they argue, the trial court should not have Adeemed
admitted@
Wilmington=s requests for admissions.[2]








Rule 198.2(a) of the rules of civil procedure
requires that a responding party must serve a written response to requests for
admissions on the requesting party Awithin
30 days after service of the request.@  Tex. R. Civ. P. 198.2(a) (emphasis
added).  Service of requests for
admissions falls under rule 21a.  Tex. R.
Civ. P. 21a; Etheredge v. Hidden Valley Airpark Ass=n, Inc., 169
S.W.3d 378, 381B83 (Tex. App.CFort
Worth 2005, pet. denied) (op. on reh=g).  Rule 21a provides that service by certified
mail is complete upon deposit of the document, enclosed in a postpaid, properly
addressed wrapper, in a post office or official depository under the care and
custody of the United States Postal Service. 
Tex. R. Civ. P. 21a; Wheeler v. Green, 157 S.W.3d 439, 441 (Tex.
2005) (explaining that the Amailbox
rule,@ rule
21a, deems requests for admissions served when mailed by certified mail, not
when received); see also 2 David E. Keltner, Texas Practice Guide:
Discovery, ' 7:34 (2008) (AThe time
for response begins ticking on the date requests are mailed (not on the date of
their receipt).@).  Rule 21a also provides that A[w]henever
a party has the right or is required to do some act within a prescribed period
after the service of a notice or other paper upon him and the notice or paper
is served upon by mail . . . , three days shall be added to the prescribed
period.@  Tex. R. Civ. P. 21a.  Therefore, Southwest had thirty-three days
from the date of service to respond to Wilmington=s second
set of requests for admissions.  








Wilmington=s second
set of requests for admissions was sent by certified mail and bears a U.S. post
office postmark of November 21, 2007. 
Therefore, Southwest=s
responses were due thirty-three days later, on December 24, 2007.  Tex. R. Civ. P. 21a.  Southwest filed its responses on December 28,
2007.

Southwest and Guzman refer us to Etheredge
and to Payton v. Ashton, 29 S.W.3d 896 (Tex. App.CAmarillo
2000, no pet.), for the proposition that the date of Aactual
service@ or Aactual
receipt@ of the
requests for admissions on the responding party is the critical and dispositive
date.  Etheredge and Payton
both involved requests for admissions sent certified mail that were returned Aunclaimed.@  Etheredge, 169 S.W.3d at 383B84; Payton,
29 S.W.3d at 898.  Here, in contrast,
Southwest and Guzman admit that they actually received the requests for
admission, but they argue that because they received the requests outside of
the three days provided for in rule 21a, their responses should not have been deemed
admitted.








Southwest and Guzman refer to a footnote in Etheredge
in which this court stated that, on remand, rule 198.2 Awill
allow Etheredge thirty days to respond upon receiving HVAA=s
request for admissions unless HVAA establishes that Etheredge has already
received constructive notice of the request.@  169 S.W.3d at 383 n.3 (emphasis added).  However, within the case=s
context, this statement acted not to modify or expand rule 198.2=s
requirement of Awithin thirty days after service@ or rule
21a=s
definition of service by certified mail, but instead to establish that
Etheredge actually had to be served, as HVAA=s
previous requests for admissions had been returned to HVAA Aunclaimed,@ and
Etheredge had therefore never received them. 
See id. at 382B83.  A party=s duty
to respond is triggered upon receipt of the requests, but that party also has a
duty to note the date of service and to calculate the due date of its responses
from the date of service.  See Cudd v.
Hydrostatic Transmission, Inc., 867 S.W.2d 101, 102B03 (Tex.
App.CCorpus
Christi 1993, no writ) (AThe rules do not provide
automatic tolling of the start date due to tardy mail service.@). 

Here, rules 21a and 198.3 were available to
provide Southwest and Guzman with a remedy. 
Rule 21a states:

Nothing herein shall preclude any party from
offering proof that the notice or instrument was not received, or, if
service was by mail, that it was not received within three days from the date
of deposit in a post office or official depository under the care and
custody of the United States Postal Service, and upon so finding, the court may
extend the time for taking the action required of such party or grant such
other relief as it deems just. 








Tex. R. Civ. P. 21a (emphasis added). 
Rule 198.3 states that the trial court may permit a party to withdraw an
admission if the party shows good cause for the withdrawal and the court finds
that the party relying on the deemed admissions will not be unduly
prejudiced.  Tex. R. Civ. P. 198.3; see
also Renee H. Tobias, Deemed Admissions: Tool, Trap or Both? 46
Baylor L. Rev. 709, 713 (1994) (stating that a motion to extend time to
respond, to prevent deemed admissions, must be filed prior to the expiration of
the original thirty-day period because deemed admissions are automatic; if time
has passed, then a motion to withdraw deemed admissions must be filed).  

Southwest and Guzman offered proof that the
requests for admissions were not received within three days from the date of
deposit, and the trial court granted both parties additional time to file Awhatever
supplemental pleading[s] you want to file.@  However, Southwest and Guzman failed to file
a motion to withdraw their admissions. 
Therefore, the deemed admissions relied upon by Wilmington in its
response to Southwest and Guzman=s
special appearances were never withdrawn. 
We overrule Southwest and Guzman=s third
issue. 

C. Personal Jurisdiction








Texas courts may exercise jurisdiction over a
nonresident defendant only if the exercise of jurisdiction is authorized by the
Texas long‑arm statute and comports with state and federal constitutional
guarantees of due process.   Moki Mac
River Expeditions v. Drugg, 221 S.W.3d 569, 574B75 (Tex.
2007); BMC Software, 83 S.W.3d at 795. 
The federal due process test consists of two parts:  (1) whether the nonresident defendant purposely
established Aminimum contacts@ in the
forum state;  and (2) if so, whether the
exercise of personal jurisdiction comports with Afair
play and substantial justice.@  Burger King Corp. v. Rudzewicz, 471
U.S. 462, 475B76, 105 S. Ct. 2174, 2183B84
(1985); Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 230B31 (Tex. 1991).  Minimum contacts are sufficient for personal
jurisdiction when the nonresident defendant purposefully avails itself of the
privilege of conducting activities within the forum state, thus invoking the
benefits and protections of its laws.  See
Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958); Michiana
Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005).








A nonresident=s
contacts with the forum state may give rise to either specific or general
jurisdiction.  BMC Software, 83
S.W.3d at 795B96.   Specific jurisdiction exists where the
defendant=s alleged liability stems from
an activity conducted within the forum state. 
Id. at 796.  A Texas court
may assert specific jurisdiction over an out‑of‑state defendant if
the defendant=s contact with this state is
purposeful and the injury arises from or relates to those contacts.  See Moki Mac, 221 S.W.3d at 572B73, 576
(considering, in light of Michiana, the extent to which a claim must Aarise
from or relate to@ forum contacts to confer
specific jurisdiction over a nonresident defendant).  This Apurposeful
availment@ inquiry has three parts: (1)
only the defendant=s contacts with the forum are
relevant, not the unilateral activity of another party or a third person; (2)
the contacts relied upon must be purposeful rather than random, fortuitous, or
attenuated; and (3) the defendant must seek some benefit, advantage, or profit
by Aavailing@ itself
of the jurisdiction.  Id. at
575;  Michiana, 168 S.W.3d at 784B85; see
also World‑Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100
S. Ct. 559, 567 (1980).    

The following requests for admission were deemed
admitted:

1. Admit that you traveled
to Phazar at the Fort Worth Airport on at least one occasion in connection
with the Project,[3]
during the relevant time frame.[4]


 

2. Admit that you were on
board the Aircraft[5]
during the time it was at Phazar at the Fort Worth Airport during the relevant
time frame.

 








3. Admit that you performed
avionics and other system troubleshooting on the Aircraft related to the
Project while it was located at the Fort Worth Airport, during the relevant
time frame. 

 

4. Admit that you met
with representatives of Plaintiff at the Fort Worth Airport during the
relevant time frame.

 

5. Admit that you met
with representatives of Phazar at the Fort Worth Airport during the
relevant time frame in connection with the Aircraft and/or the Project.

 

6. Admit that your
meetings with representatives of Plaintiff and of Phazar at Phazar at the Fort
Worth Airport were in connection with problems that continued to exist
in connection with the Project that required correction, during the relevant
time frame.

 

7. Admit that you attended
meetings with Plaintiffs= representatives at Phazar at the Fort Worth
Airport from time to time during the relevant time frame.

 

8. Admit that you attended
a meeting with Plaintiffs= representatives and with counsel for the Plaintiffs
on November 30, 2005, at Phazar at the Fort Worth Airport.

 

9. Admit that the meeting you attended on
November 30, 2005, at Phazar at the Fort Worth Airport, was for the purpose,
in part, of discussing the Aircraft and the Project, with Plaintiffs=
representatives.








Although Southwest and Guzman claim that they
committed no specific or purposeful acts in Texas and that there is no evidence
of their purposeful availment through which they can be said to have sought a
benefit in Texas, their deemed admissions clearly provide a basis for the trial
court to exercise specific personal jurisdiction.  Under Moki Mac, the deemed admissions
above describe relevant contacts by Southwest and Guzman in Texas that were
purposeful rather than random, fortuitous, or attenuated.  See 221 S.W.3d at 575.  Furthermore, Southwest and Guzman never
denied that they had a contract with Wilmington involving the Aircraft or that
they failed to seek a benefit from performing the contract that, per the deemed
admissions, involved some performance in Texas. 
Therefore, sufficient contacts existed to give the trial court specific
personal jurisdiction over Southwest and Guzman.  We overrule Southwest and Guzman=s first
issue.

IV. Conclusion

Having overruled Southwest and Guzman=s
dispositive issues, we affirm the trial court=s
judgment.  See Tex. R. App. P.
47.1.

 

BOB
MCCOY

JUSTICE

 

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: November 20, 2008











[1]See Tex. R. App. P. 47.4.





[2]Wilmington responds that
Southwest and Guzman have waived this alleged error because the trial court
made no rulings and did not enter any order with regard to the Adeemed admissions.@  However, when responses to requests for
admissions are not timely served, the requests are considered admitted without
the necessity of a court order.  Tex. R.
Civ. P. 198.2(c).  Therefore, contrary to
Wilmington=s position, the trial
court did not have to make a ruling or enter an order with regard to the
alleged Adeemed admissions.@





[3]The AInstructions/Definitions@ section of Wilmington=s requests for admissions
defines AProject@ as

 

the aircraft and avionics
maintenance, goods, and services provided by [Guzman and Southwest], including
aircraft and avionics goods and services required for the Aircraft to be
modified and certificated for operations requiring compliance with Reduced
Vertical Separation Minima (ARVSM@), the update to the Aircraft=s Flight Management
System (AFMS@), and the installation
of a Terrain Awareness and Warning System (ATAWS@).

 





[4]The AInstructions/Definitions@ section defines Arelevant time frame@ as Afrom the year 2003 to the
present.@





[5]The AInstructions/Definitions@ section defines AAircraft@ as Athat certain Gulfstream
II multi-engine jet aircraft, registration number N4NR, manufacturer=s serial number 225
and/or that certain aircraft made the basis and subject of Plaintiff=s Petition, as amended,
in this lawsuit.@