# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00377-CV

**Alfredo A. Galindo and Idalia M. Galindo, Appellants**

**v.**

**Prosperity Partners, Inc., Comet Financial Corporation, Great West Life &
Annuity Insurance Company, Bransen Incorporated, and Clayton Homes, Inc.
dba Midland States Life Insurance Company, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-05-000574, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Alfredo A. Galindo and his wife, Idalia M. Galindo, appeal a district court judgment granting the special appearance of Clayton Homes, Inc. (Clayton). Finding no abuse of discretion, we will affirm the district court's judgment.

### BACKGROUND

On June 3, 1995, Alfredo Galindo won over $4,000,000 from the Texas lottery, to be paid in annual installment payments of about $200,000 each over a period of approximately twenty years. In 1996, the Galindos borrowed $600,000 from Bransen Incorporated, securing the loan with their next nine annual after-tax installment payments.[1] The loan was funded by Midland

---

[1] The promissory note specified an annual interest rate of 20.26%.

States Life Insurance Company in exchange for Bransen Incorporated's assignment of its security interest in the nine installment payments.

In November of 2000, the Galindos assigned five of the previously pledged installment payments to Prosperity Partners, Inc. The Galindos applied to the Travis County District Court for the appropriate order permitting the assignment. *See* Tex. Gov't Code Ann. § 466.410 (West 2004). The district court issued the order on February 20, 2001. The installment payments were subsequently assigned by Prosperity Partners, Inc., to Comet Financial Corporation, which, in turn, assigned them to Great West Life & Annuity Insurance Company.

The Galindos filed the current suit in February 2005, seeking to set aside the district court's assignment order by bill of review. They alleged that the parties to the original loan and the 2001 assignments had engaged in deceptive and fraudulent acts calculated to induce the Galindos into usurious loans. Midland was not initially named as a defendant, but was designated as a responsible third-party by Comet Financial Corporation and Great West Life & Annuity Insurance Company. The Galindos amended their petition to add "Clayton Homes dba Midland State Life Insurance Company" as a defendant on January 17, 2008.

On February 15, 2008, Clayton filed a special appearance denying that it was subject to either specific or general jurisdiction in Texas and denying that it did business as Midland State Life Insurance Company. A hearing on the special appearance was set for April 3, 2008. The Galindos served written discovery on Clayton on March 20, 2008. Seven days before the special appearance hearing, the Galindos requested a postponement so that they could have the benefit of

2

Clayton's answers to the written discovery at the hearing. The hearing was reset by agreement to May 15, 2008.

On May 7, counsel for the Galindos wrote Clayton's counsel, again requesting that Clayton agree to continue the hearing, this time citing their desire to depose three additional witnesses: Kevin Clayton, president of Clayton; Tom Hodges, general counsel for Clayton; and Paul Nichols, secretary for Midland States Life Insurance Company. Clayton declined to agree to the Galindos' request for a second postponement. On the following day, the Galindos filed a response to Clayton's special appearance. The response included a motion for continuance to obtain three additional depositions, plus that of Linda Ponce, an employee of Clayton or a wholly-owned subsidiary, CMS Services, Inc., who provided tax services to Clayton. However, the Galindos did not set their continuance motion for hearing or obtain a ruling prior to the special appearance hearing. The special appearance hearing was held as scheduled. At its conclusion, the district court granted the Galindos no additional time for discovery, granted Clayton's special appearance, and dismissed Clayton from the Galindos' suit.

**DISCUSSION**

In their first two points of error, the Galindos argue that the district court erred in denying their request to continue the special appearance hearing because there had not been adequate time for discovery. According to the Galindos, additional deposition testimony from the four additional witnesses was essential to the Galindos' ability to establish jurisdiction in Texas.

We review a trial court's order denying a motion for continuance for abuse of discretion. *BMC Software v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its

discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

The Texas Supreme Court has considered the following non-exclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance filed for the purpose of gaining additional time for discovery: the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.* (diligence and length of time on file); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (materiality and purpose); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521-22 (Tex. 1995) (materiality); *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) (diligence); *see also Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (using these factors to decide whether a trial court abused its discretion in denying a motion for continuance). To determine whether the district court abused its discretion by granting Clayton's special appearance without allowing additional time for discovery, we apply these factors to the evidence in the record before us. *See BMC Softare*, 83 S.W.3d at 800.

The Galindos added Clayton to their lawsuit on January 17, 2008. Clayton filed its special appearance on February 15, 2008, and Clayton's special appearance was heard three months later, on May 15, 2008. In the interim, the Galindos requested, and Clayton agreed to, a postponement of the initial special appearance setting on April 3, 2008. The Galindos had served written discovery on Clayton on March 20, 2008, and sought additional time to receive and review those responses before the special appearance hearing. Clayton served its written responses on

4

April 25, 2008. Approximately one week before the hearing, the Galindos began requesting another postponement for the purpose of deposing the additional witnesses. The record reflects that these witnesses were identified and known to the Galindos through the deposition testimony of Mary Redington no later than January 17, 2008.

At the time Clayton's special appearance was granted, the claims against it had been on file for four months. The Galindos served their first set of written discovery more than two months after the claims had been filed and more than a month after Clayton's special appearance was filed, but only two weeks before the first special appearance setting. Clayton agreed to a postponement of the first setting to allow for additional time for discovery. Not until May 8, 2008, almost two weeks after receiving additional discovery responses and only one week before the hearing, did the Galindos file their response to Clayton's special appearance. Although they included a request for additional time for discovery in their response, they did not comply with the procedures governing continuance motions under the Travis County Local Rules in effect at the time.[2]

---

[2] 3.4   Motions for Continuance

Motions for continuance not set on the Central Docket will be heard by the Duty Judge each Thursday at 9:30 a.m.
. . .

The party presenting the motion for continuance must obtain the Docket Management System index from the District Clerk's office and deliver it to the Duty Judge designated to hear motions for continuance, together with a copy of the motion, any response, and a proposed order.

Travis County Loc. R. 3.4.

In support of their request for additional time for discovery, the Galindos attached the affidavit of their counsel. Counsel averred that the Galindos could not present facts justifying their opposition to the special appearance without conducting further discovery, including the depositions of the four additional witnesses. According to counsel, the deposition testimony would be used to show "that Defendant Clayton purposefully availed itself of the privilege of doing business in the state of Texas by using Midland States Life Insurance Company to fund the 1996 Loan." In addition, counsel explained the need for additional documents to supplement Clayton's responses to written discovery. As to all additional discovery sought, counsel explained:

> This information Plaintiffs seek is material to the issue of specific jurisdiction because Plaintiffs will be able to show that Defendant Clayton purposefully availed itself of the privilege of doing business in the state of Texas by using Midland States Life Insurance Company.
>
> I have been unable to secure this evidence earlier even though I diligently used the discovery process by serving discovery to Clayton on March 20, 2008. Additionally, I cross-noticed the deposition of Midland's corporate representative in January 2008, and instead, a corporate representative, Mary Redington, from another Clayton subsidiary, Vanderbilt Mortgage and Finance, appeared for the deposition. I was unable to question Ms. Redington about the corporate structure of Midland and/or Clayton because Mr. Todd Fulks, counsel for Clayton who was present stated that she did not have any knowledge regarding Midland and/or Clayton's corporate structure.

Although the Galindos assert that the additional discovery sought is material to the issue of jurisdiction, referring vaguely to the corporate structure of Clayton and related entities, they assert nothing specific as to how the corporate structure may impact the court's ability to assert personal jurisdiction over Clayton. In addition, they fail to explain how the deposition testimony sought will provide additional evidence that they were unable to obtain through written discovery.

Based on the two-month gap between the time the Galindos added Clayton to the lawsuit, the time the Galindos served their first discovery request on Clayton, and the Galindos' last-minute request for postponement, their failure to comply with the local rules governing continuances, and their failure to provide details as to how the specific discovery requested was material to the jurisdictional inquiry, we cannot conclude that the district's court decision to grant Clayton's special appearance without allowing additional time for discovery was a clear abuse of discretion. *See BMC Software*, 83 S.W.3d at 800. Accordingly, we overrule the Galindos' first two points of error.

In their third point of error, the Galindos argue that the evidentiary support for Clayton's special appearance was legally and factually insufficient. According to the Galindos, the evidence offered by Clayton to support its special appearance was legally and factually insufficient because it presented only a "'one-time snapshot' of factors that Clayton currently 'does' or 'has' or 'is'—rather than facts concerning what Clayton 'did' or 'had' or 'was' during all points relevant to [the Galindos'] allegations."

A trial court's determination of whether Texas can assert personal jurisdiction over a nonresident defendant is one of law that we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). However, the trial court frequently must decide disputed issues of fact before deciding the jurisdictional issue. *BMC Software*, 83 S.W.3d at 794. Where, as here, the trial court does not enter express findings of fact and conclusions of law regarding its ruling on a special appearance, the reviewing court infers all fact findings necessary to support the judgment that are supported by the evidence. *Id*. at 794-95. These implied findings may be challenged for

7

legal and factual sufficiency. *Id*. Once it is determined that the trial court's findings are supported by sufficient evidence or, if the material facts are undisputed, the reviewing court decides as a matter of law whether those facts negate all bases for personal jurisdiction. *Id*.

A nonresident's forum-state contacts may give rise to two bases of personal jurisdiction, "general" and "specific." *Moki Mac*, 221 S.W.3d at 575. General jurisdiction is established if the nonresident has made "continuous and systematic" contacts with the forum, and does not depend on whether the defendant's alleged liability arises from those contacts. *Id*. Specific jurisdiction is established if the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum." *Id.* at 576 (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984)).

As plaintiffs, the Galindos bore the initial burden of pleading sufficient facts to invoke personal jurisdiction over Clayton under the Texas long-arm statute. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 870 (Tex. App.—Austin 2008, no pet.). Clayton then had the burden of negating all forms of personal jurisdiction the Galindos alleged. *Id*.

The Galindos allege that Clayton is subject to jurisdiction in Texas based on theories of both specific jurisdiction and general jurisdiction. Further, the Galindos allege that Midland's activities in Texas should be imputed to Clayton under a veil-piercing theory. In response to the Galindos' allegations, Clayton presented evidence that included the affidavit of Linda Ponce, in which she averred:

- "No employee or agent of CHI [Clayton Homes, Inc.] was involved in the events or transactions complained of by the Galindos."

- "CHI is a Delaware corporation, with its principal place of business in the State of Delaware."

- "CHI is not qualified, licensed, registered, or authorized to do business in the State of Texas."

- "CHI has no employees, agents, or offices in the State of Texas."

- "CHI does not own or lease any Texas real estate or other Texas property."

- "CHI does not pay taxes in the State of Texas."

- "CHI does not conduct any business or sales in the State of Texas."

- "CHI does not sell goods or services in Texas and does no manufacturing in Texas."

In response, the Galindos cited various excepts from the deposition of Mary Redington. They attempt to characterize Redington's testimony as conceding that Clayton committed various acts in Texas in connection with the loan. In fact, Redington was referring solely to corporate entities other than Clayton. Redington was an employee of Vanderbilt Mortgage, the company which serviced the Galindos' loan for Midland. The deposition transcripts excerpted by the Galindos describe how Midland, Vanderbilt Mortgage, and Prosperity Partners, Inc. were involved in the loan to the Galindos and how the revenues from the deal were allocated between them. They do not mention Clayton, nor do the Galindos present evidence of any specific contact that Clayton had with Texas.

Clayton's uncontroverted evidence negates all forms of personal jurisdiction alleged by the Galindos. *See Ghosh*, 251 S.W.3d at 870. Clayton's evidence shows no "continuous and systematic" contacts with Texas and no specific activity in Texas related to the Galindos

9

allegations of liability. *See Moki Mac*, 221 S.W.3d at 575-76. Further, the Galindos have produced no evidence of any relationship between Clayton and another entity doing business in Texas that would allow the court to impute that entity's activity to Clayton. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173-74 (Tex. 2007).

Even without controverting evidence, however, the Galindos argue that the evidence presented by Clayton to support its special appearance is insufficient to defeat jurisdiction because it provides only a "one-time snapshot" of Clayton's activities in Texas, rather than a broad overview over a reasonably sufficient duration of time. *See id.* at 174 ("We also agree that a mere one-time snapshot of the defendant's in-state activities may not be sufficient . . . and contacts should be assessed over a reasonable number of years, up to the date suit is filed.") (internal quotation marks omitted). According to the Galindos, Ponce's affidavit is legally and factually insufficient to support Clayton's special appearance because her statements used the present tense to describe Clayton's current activities rather than the past tense to describe Clayton's activities at all times relevant to this lawsuit.

Although some of Ponce's statements referred to Clayton's current activities, her affidavit also included statements specific to the time period during which the events relevant to the lawsuit occurred. For example, Ponce averred that "[n]o employee or agent of CHI was involved in the events or transactions that are complained of in and the subject of Plaintiffs' petition." In addition, in response to written discovery, Ponce stated that no "employee, officer, or representative [of Clayton] . . . conducted business or acted on behalf of Midland States Life Insurance Company in Texas." Clayton also cites to written discovery responses in which Ponce

10

stated that "Clayton Homes, Inc. has not and does not conduct any business or financial transactions in Texas. I know of no other bank or financial institution in Texas where . . . Clayton Homes, Inc. . . . [has] or had an account." Thus, even without the testimony as to the current activities of Clayton in Texas, the uncontroverted evidence presented by Clayton in support of its special appearance is legally and factually sufficient to support the district court's implied findings that it has neither general nor specific jurisdiction. Because the evidence is legally and factually sufficient to support the district court's judgment, we overrule the Galindos' third point of error.

## CONCLUSION

Having overruled each of the Galindos' points of error, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: February 26, 2009

11