IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DRILCO OIL AND GAS, INC.,**
**DRILCO 2019 1V2H DRILLING PROGRAM, LLC,**
**AND HUGH D. DALE, JR.,**
**Defendants Below, Petitioners**

**FILED**

**December 23, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-492**          (Cir. Ct. of Calhoun Cnty Case No. CC-07-2023-C-3)

**SIGNAL VENTURES, LLC,**
**Plaintiff Below, Respondent**

**MEMORANDUM DECISION**

Petitioners Drilco Oil and Gas, Inc., Drilco 2019 1V2H Drilling Program, LLC, and Hugh D. Dale, Jr., appeal the October 4, 2023, order of the Circuit Court of Calhoun County which denied their motions to quash foreign judgment and to dismiss foreign judgment and vacate default judgment. Respondent Signal Ventures, LLC, filed a response.[1] Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This matter involves application of the Uniform Enforcement of Foreign Judgments Act ("Uniform Act"). W. Va. Code §§ 55-14-1, *et seq.* (1989). In this case, a dispute arose regarding Signal Ventures, LLC's ("Signal") purchase of an interest in a natural gas drilling program offered by Drilco Oil & Gas, Inc. ("Drilco"), called the 3-Well Joint Venture Drilco 2019 1V2H Drilling Program ("Drilco 2019"). Drilco is a West Virginia corporation owned by Petitioner Hugh D. Dale, Jr., a West Virginia resident. Signal is an Oregon limited liability company. Signal alleges it purchased its interest in Drilco 2019 through Drilco's sales office located in Dallas/Fort Worth, Texas after Signal's owner spoke to Kevin Jasien, Drilco's Texas-based sales agent. In January 2022, Signal filed suit against petitioners (and Mr. Jasien) in Dallas County, Texas District Court alleging violations of

---

[1] Petitioners are represented by J. Morgan Leach, Esq., and Robert J. Williamson, Esq. Respondent is represented by Johnson W. Gabhart, Esq.

the Texas Securities Act, fraud, breach of fiduciary duty, negligent misrepresentation, and civil conspiracy arising from petitioners' efforts to market interests in its drilling programs to residents of Texas and others through Drilco's Dallas/Fort Worth sales office. The complaint alleged that Drilco's Dallas/Fort Worth office was the location where all or a substantial portion of the events and omissions giving rise to the complaint occurred.

After four unsuccessful attempts to personally serve Mr. Dale and the registered agents for the entity defendants, Signal filed a motion for substitute service, with supporting affidavits, in the Texas court. The motion was granted on March 1, 2022, and the court directed service to be effectuated by securely attaching the complaint on the front door of the address listed as Mr. Dale's residential address and the office address for the entity defendants listed in the West Virginia Secretary of State's records. Signal subsequently filed affidavits of substitute service reflecting service according to the Texas court's order. The petitioners did not respond, and the Dallas County, Texas District Court subsequently entered a default judgment order in favor of Signal.

On March 2, 2023, Signal filed in Calhoun County Circuit Court an authenticated copy of a November 14, 2022, Final Judgment order for $703,886.15 (with post-judgment compounded interest of 5.00%) rendered against petitioners by the Dallas County, Texas District Court, together with counsel for Signal's Affidavit of Last Known Address and evidence of the mailing of the Final Judgment to the petitioners on that same date, pursuant to the Uniform Act.

Petitioners subsequently filed in Calhoun County Circuit Court a motion to quash the foreign judgment, an emergency temporary restraining order, and a motion to dismiss the foreign judgment and vacate the default judgment, asserting that the Texas court lacked personal jurisdiction over them. Petitioners alleged they were never properly served with Signal's original petition and were unaware of the proceedings in Texas. Petitioners claim that the Texas court lacked personal jurisdiction because constructively serving petitioners by affixing the summonses and complaint to the doors of their residence and office location failed to satisfy both the West Virginia Rules of Civil Procedure and the Texas long-arm statute. Petitioners additionally argued that the Texas court lacked personal jurisdiction because under the Drilco 2019 *Agreement of Limited Liability Partnership* ("Agreement of LLP"), the parties agreed that West Virginia would be the jurisdiction and choice of law for all disputes, making the Texas court an improper venue.

The Calhoun County Circuit Court held two hearings and ultimately concluded that the Texas court had jurisdiction over the petitioners, finding they were properly served with process in the Texas action under the applicable law and rules of procedure, and denied the motions to quash and dismiss the foreign judgment and vacate the default judgment. It is from the Calhoun County Circuit Court's order that petitioners now appeal.

In reviewing challenges to the findings and conclusions of a circuit court, we apply a three-pronged standard of review. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, the underlying factual findings are reviewed under a clearly erroneous standard, and questions of law are subject to de novo review. Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997); Syl. Pt. 1, *Evans Geophysical, Inc. v. Ramsey Assoc. Petroleum, Inc*., 217 W. Va. 45, 614 S.E.2d 692 (2005).

"Under Article IV, Section 1, of the Constitution of the United States, a valid judgment of a court of another state is entitled to full faith and credit in the courts of this State." Syl. Pt. 8, *Johnson v. Pinson*, 244 W. Va. 405, 854 S.E.2d 225 (2020) (quoting Syl. Pt. 1, *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968)). "To facilitate enforcement of foreign judgments, our Legislature enacted the [Uniform Act]. The Act governs judgments issued in another state and then registered in West Virginia for purposes of execution/collection. The Act provides that such judgments, once filed in West Virginia, are treated the same as if they were initially issued in West Virginia." *Johnson v. Pinson*, 244 W. Va. at 414-415, 854 S.E.2d at 234-235.

"The Uniform Act provides, in pertinent part, that '[a] copy of any foreign judgment authenticated in accordance with ... the statutes of this state may be filed in the office of the clerk of any circuit court of this state.'" *Wright v. Automotive Finance Corporation*, 2022 WL 1693828, at *3 (W. Va. May 26, 2022) (memorandum decision) (quoting W. Va. Code § 55-14-2). "For a judgment to be entitled to full faith and credit, the [foreign] court issuing the judgment must have personal jurisdiction over the entity against whom the judgment was entered." *Evans Geophysical, Inc. v. Ramsey Associated Petroleum, Inc*., 217 W. Va. 45, 47, 614 S.E.2d 692, 694 (2005) (per curiam).

On appeal, petitioners assert three assignments of error.[2] First, they argue that the circuit court erred in finding that the Texas court had sufficient personal jurisdiction to hear the matter due to a jurisdictional clause within the Agreement of LLP.[3] Petitioners claim

---

[2] We note the distinctive nature of the business entities involved in this matter, specifically that one petitioner is an individual resident of West Virginia, another is a West Virginia corporation, and the third appears to be a West Virginia limited liability company (but is also referenced in the record as a limited liability partnership and general partnership). Petitioners' sole legal arguments pertain to corporate entities, and petitioners fail to develop any facts or arguments respecting the identities of these separate legal entities with distinct facts and legal characteristics. We address solely the petitioners' assignments of error presented to the Court and regard all other matters waived.

[3] We note the petitioners did not clearly establish to the satisfaction of the circuit court that the "Partnership Agreement of Drilco 2019 1V2H Drilling Program" attached in the appendix record is the document that the Subscription Agreement refers to as the

that Signal's contract with Drilco included a Subscription Agreement executed on March 3, 2020, which bound Signal, as the Subscriber, to the terms of the Agreement of LLP which stated that should any dispute arise in which the Subscription Agreement and the Agreement of LLP conflicted, the Agreement of LLP would govern. Petitioners allege that Paragraph 6 of the Subscription Agreement adopts and binds the Subscriber to the Agreement of LLP.[4] Paragraph 6 states:

> 6. *Execution of Agreement of Limited Partnership*. The Subscriber hereby acknowledges that the Subscriber's execution of this Subscription Agreement, upon its acceptance by the Managing General Partner[5], constitutes the execution of the Agreement of Limited Partnership by the Subscriber as a party thereto in accordance with all its terms and provisions with the same force and effect as if such terms and provisions were set forth herein verbatim.

---

"Partnership's Agreement of Limited Partnership," or the "Drilco 2019 Agreement of Limited Liability Partnership" as referenced in petitioners' brief. It wasn't until the second hearing on September 7, 2023, that petitioners submitted this document. Assuming authenticity of such evidence for our consideration on appeal, it remains clear that Signal never conceded that the Agreement of LLP affects its rights as an investor under Drilco's drilling program insofar as Signal was not a signatory to the Agreement of LLP.

[4] We further note that Paragraph 2 of the Subscription Agreement states:

> 2) *Adoption of Agreement of Limited Partnership*. The Subscriber hereby ratifies, adopts, accepts and agrees to be bound by all terms and provisions of the Partnership's Agreement of Limited Partnership.

> Upon acceptance of this Subscription, the undersigned shall thereupon automatically become, depending on the Subscriber's election, a General Partner or Limited Partner for all purposes of the Agreement of Limited Partnership, without any need for execution of the Agreement of Limited Partnership by the Subscriber.

The "Partnership" is defined in the Subscription Agreement variously as "Drilco 2019 1V2H Drilling Program, Drilco 2019 1V2H Company, L.L.C." and "Drilco 2019 1V2H Drilling Program, LLC."

[5] The "Managing General Partner" is defined in the Subscription Agreement as "Drilco Oil and Gas Corporation, a West Virginia company."

4

Furthermore, petitioners argue that Article X, Section 10.4 of the Agreement of LLP binds the parties to the governing law and jurisdiction of the State of West Virginia. It states:

> 10.4 ***Governing Law and Jurisdiction*** This Agreement shall be construed in accordance with and governed in all respects by the laws of the State of West Virginia.

Petitioners contend that such a forum selection clause is binding on Signal pursuant to the Subscription Agreement executed on March 3, 2020. Moreover, petitioners suggest that Article X, Section 10.4 of the agreement is enforceable under both West Virginia and Texas law, because it was sufficiently communicated to Signal as it is plainly expressed in the contract language as a mandatory clause and there is no showing of unreasonableness in its enforcement. *See* Syl. Pt. 4, *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 690 S.E.2d 322 (2009) (outlining a four-part analysis for assessing the enforceability of a forum selection clause); *State ex rel. 3C LLC v. O'Briant*, 247 W. Va. 135, 144, 875 S.E.2d 273, 282 (outlining circumstances under which a forum selection clause may be found unreasonable and unjust).

We are not persuaded by this argument. The language of Article X, Section 10.4 of the appendix document is not a binding choice of forum provision. It only dictates choice of law. While the section heading says "Jurisdiction," the actual clause includes only a choice of law provision. Furthermore, looking elsewhere in Article X, Section 10.9 states, "***Headings***. The headings in this Agreement are inserted for descriptive purposes only and shall not control or alter the meaning of any provision hereof." Accordingly, we read this section solely as a choice of law provision which does not affect the Texas court's personal jurisdiction over petitioners. Therefore, we find no basis to disturb the circuit court's ruling on this assignment of error.

For their next assignment of error, petitioners allege that the circuit court erred in finding that the Texas court obtained personal jurisdiction. First, petitioners argue that they were not properly served the summons in accordance with the West Virginia Rules of Civil Procedure, and that absent personal service, Signal should have substituted service through the West Virginia Secretary of State as an agent of service of process. *See* Tex. Civ. Prac. & Rem. Code §§ 17.043-44. Petitioners posit that Signal was required to "strictly comply" with the procedural requirements of proper service for the State of Texas. *Pino v. Perez*, 52 S.W.3d 357, 358 (Tex. App. 2001). Otherwise, petitioners claim the trial court lacks jurisdiction and any default judgment it renders is void. *Id.* at 360.

Second, petitioners claim that the Texas court did not have personal jurisdiction because Drilco does not maintain "minimum contacts" with Texas sufficient to satisfy federal and state constitutional due process guarantees when exercising personal jurisdiction. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)

5

(citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). They claim that Signal did not allege connections by Drilco with Texas in its initiating petition or state that the contract was executed in Texas, for example.

At the outset, we note that petitioners have the burden of proof to establish that the Texas court did not have personal jurisdiction over them. *Hessee v. Simoff Horse Transport, LLC*, 599 S.W.3d 694, 699 (2020). With respect to petitioners' minimum contacts argument, we note that Texas courts can exercise personal jurisdiction over non-resident defendants if a three-prong test is satisfied: 1) the defendant must establish minimum contacts by purposefully doing some act or transaction in the forum state; 2) the cause of action must arise from or be connected to the act or transaction, or the contact with Texas must be continuing or systematic; and 3) the assumption of jurisdiction by a foreign state must not offend traditional notions of fair play and substantial justice. *Ennis v. Loiseau*, 164 S.W.3d 698 (Tex. App. 2005).

Upon a review of the record, we find sufficient evidence of such minimum contacts. Petitioners' promotional materials include references to their "Capital Formation Office in Dallas/Fort Worth," Texas, where a sales agent worked to sell the Drilco 2019 Program to investors. Also, Kevin Jasien, the Texas salesperson, filed a Verified Statement attesting that he sold Signal its interest in the Drilco 2019 Program through his office in Texas, satisfying the second prong of the *Ennis* test. Given these circumstances, we find nothing to suggest that jurisdiction in Texas would offend traditional notions of fair play and substantial justice.

Furthermore, the circuit court correctly noted that the Texas court obtained personal jurisdiction over the petitioners through substitute service as provided in the Texas Rules of Civil Procedure. Rule 106 of the Texas Rules of Civil Procedure provides:

Method of Service

(a)     Unless the citation or court order otherwise directs, the citation must be served by:

   (1)  delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition; or
   (2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition.

(b) Upon motion supported by a statement-sworn to be before a notary or made under penalty of perjury-listing any location where the defendant can probably be found and stating specifically the facts showing that service has been attempted under (a)(1) or (a)(2) at the location named in

6

the statement but has not been successful, the court may authorize service:
(1) by leaving a copy of the citation and of the petition with anyone older than sixteen at the location specified in the statement; or
(2) in any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give the defendant notice of the suit.

Moreover, Rule 108 of the Texas Rules of Civil Procedure provides:

Service in Another State

Where the defendant is absent from the State, or is a non-resident of the State, the form of notice to such defendant of the institution of the suit shall be the same as prescribed for citation to a resident defendant; and such notice may be served by any disinterested person who is not less than eighteen years of age, in the same manner as provided in Rule 106 hereof. The return of service in such cases shall be completed in accordance with Rule 107. A defendant served with such notice shall be required to appear and answer in the same manner and time and under the same penalties as if he had been personally served with a citation within this State to the full extent that he may be required to appear and answer under the Constitution of the United States in an action either in in rem or in personam.

Such service may be accomplished by affixing service to the door of the defendant's last known residence or business address. *See Adame v. Palisades Collection, L.L.C.*, 2012 WL 2564717 (Tex. App. 2012); *In re M.C.B.*, 400 S.W.3d 630 (Tex. App. 2013).

Here, Signal attempted service multiple times before moving the court to permit substitute service by alternative means pursuant to Texas law. Signal properly included a sworn statement with its motion for substitute service. *Lockett v. Lockett*, 699 S.W.3d 658, 664 (Tex. App. 2024) ("For substitute service to be proper under Rule 106, a sworn statement is necessary."). The Texas court ordered the complaint and summonses to be affixed to the corporate defendant's principal office address and Mr. Dale's residence, as listed with the West Virginia Secretary of State. Whenever a court issues an order for substitute service under Rule 106, "the only authority for the substitute service is the order itself." *See Spanton v. Bellah*, 612 S.W.3d 314, 317 (Tex. 2020) (per curiam). Proof of such service "shall be made in the manner ordered by the court." Tex. R. Civ. P. 107(f). "Courts must 'rigidly' enforce rules governing service of process when a default judgment is rendered because the only ground supporting the judgment is that the defendant has failed to respond to the action in conformity with the applicable procedure for doing so." *Lockett* at 665 (citing *Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007) (per curiam). Here, there is no evidence in the record to suggest that the process server did not comply

with the Texas court's order for service. The Texas court has the discretion to determine what manner of service will be "reasonably effective to give the defendant notice of the suit." *Id*. at 664. We find no abuse of that discretion here, and no reason to disturb the circuit court's ruling that the Texas court had jurisdiction.

Petitioners also argue that the Texas Court did not obtain personal jurisdiction because the West Virginia Rules of Civil Procedure do not permit service of process by affixing a complaint and summons to a defendant's door. However, the procedural rules for service of process in the foreign court determine personal jurisdiction. *See Hessee v. Simoff Horse Transport, LLC*, 599 S.W.3d at 700. In that case, Simoff filed a notice of foreign judgment in an Arkansas state court. Mr. Hessee, an Arkansas resident, challenged the jurisdiction of the foreign court (in this case Delaware) by arguing that he was not properly served notice of the legal action in accordance with the Arkansas rules of civil procedure. The Arkansas Court of Appeals, when applying the Act, rejected Mr. Hessee's argument. "[W]hether service of process was proper under Arkansas law has no bearing on this appeal. The issue in this case is whether service of process was sufficient to allow the Delaware court to obtain personal jurisdiction over Hessee, not whether jurisdiction could be had under Arkansas…While Arkansas law does not provide for service by first class mail when the certified letter is returned 'unclaimed,' Delaware law does." *Id*. In summary, the circuit court committed no error when it found that Delaware obtained personal jurisdiction over the petitioners.

Finally, for their third assignment of error, petitioners allege that the circuit court erred in its finding that the service of process of the filing of foreign judgment in West Virginia was properly effectuated. Petitioners claim that Signal was obligated to follow the procedures for serving a summons to initiate a new civil action pursuant to Rule 4 of the West Virginia Rules of Civil Procedure when it filed the notice of foreign judgment in circuit court. However, this argument is misplaced. West Virginia Code § 55-14-3 (1989), part of our Uniform Enforcement of Foreign Judgments Act, states:

Notice of Filing

(a) At the time of the filing of the foreign judgment, the judgment creditor or his lawyer shall make and file with the clerk of the circuit court an affidavit setting forth the name and last known post-office address of the judgment debtor and the judgment creditor.

(b) Promptly upon the filing of the foreign judgment and the affidavit, the clerk shall mail notice of the filing of the foreign judgment to the judgment debtor at the address given and shall make a note of the mailing in the docket. The notice shall include the name and post-office address of the judgment creditor and the judgment creditor's lawyer, if any, in this state. In addition, the judgment creditor may mail a notice of the filing of the judgment to the

judgment debtor and may file proof of mailing with the clerk. Lack of mailing notice of filing by the clerk shall not affect the enforcement proceedings if proof of mailing by the judgment creditor has been filed.

(c) No execution or other process for enforcement of a foreign judgment filed hereunder may issue until thirty days after the date the judgment is filed.

Signal e-filed the Notice of Filing of Foreign Judgment in Calhoun County Circuit Court on March 2, 2023, and included a certificate of service indicating that it mailed copies to the petitioners that day via certified mail. The statute does not specify any other method of service beyond simple mailing, and in fact, does not require the judgment creditor to make the mailing personally, alternatively assigning that task to the clerk. Accordingly, we find no error in the circuit court's ruling that Signal's filing of the foreign judgment was properly made, and no basis to overturn its decision.

Accordingly, we affirm the circuit court's October 4, 2023, order.

Affirmed.

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

9