**Reversed and Rendered and Opinion filed June 3, 2025**



In The

# Fifteenth Court of Appeals

---

## NO. 15-24-00021-CV

---

**KETAN MEHTA, Appellant**

V.

**THE STATE OF TEXAS EX REL. TARIK AHMED, Appellee**

---

**On Appeal from the 71st District Court
Harrison County, Texas
Trial Court Cause No. 23-1031**

---

## OPINION

This interlocutory appeal arises from a dispute involving claims requesting payments made under the Texas Medicaid program. Appellee the State of Texas, on behalf of Tarik Ahmed (collectively, the "State"), sued Appellant Ketan Mehta along with two other defendants—Tris Pharma, Inc. ("Tris") and Pfizer, Inc. ("Pfizer")—under the Texas Medicaid Fraud Prevention Act ("TMFPA") alleging that Mehta and the other defendants knowingly made or caused others to wrongfully make claims under Texas Medicaid for an adulterated drug. The State seeks compensation,

along with civil penalties, for any payments or benefits disbursed by Texas Medicaid due to any wrongfully filed claims made by or caused by Mehta, Tris, and Pfizer. Mehta filed a special appearance as to the TMFPA claim against him. The trial court denied the special appearance, and Mehta filed this interlocutory appeal challenging the trial court's decision.

Because we conclude the trial court did not have personal jurisdiction over Mehta, we reverse.

## BACKGROUND

Mehta, a New Jersey resident, is the founder and Chief Executive Officer of Tris, a pharmaceutical development company. Tris has its principal place of business in New Jersey and was organized under the laws of New Jersey. Tris developed a prescription medication called Quillivant XR ("Quillivant") designed to support minors suffering from attention-deficit/hyperactivity disorder. Mehta, on behalf of Tris, entered into a marketing agreement with Pfizer to sell Quillivant pursuant to which Tris would be paid a 25% royalty on net sales.[1] The State alleges that Pfizer successfully campaigned to have Quillivant added to the Texas Medicaid formulary in June 2013, which made Quillivant reimbursable under the Texas Medicaid program—a program run by the Texas Health and Human Services Commission ("HHSC"). Quillivant secured placement on the Medicaid preferred drug list in 2014.

The State pleaded that Quillivant was adulterated due to deficient manufacturing and quality control practices. According to the State, Mehta personally directed Tris and its Quality Control/Quality Assurance personnel to change its testing processes repeatedly to manipulate test results instead of

---

[1] The marketing agreement is not in the record.

investigating and correcting the underlying manufacturing deficiencies. The State claims this conduct caused Quillivant to be adulterated in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Texas Food, Drug, and Cosmetic Act ("TFDCA").

On November 8, 2023, the State filed under seal a First Amended Petition (the "Petition") against Mehta, Tris, and Pfizer alleging, among other things, that these defendants violated the TMFPA by knowingly making, or causing to be made, claims for payment under the Medicaid program for an adulterated product, Quillivant. Specifically for our purposes, the State alleges that Mehta violated the version of Section 36.002(7)(C) of the Texas Human Resources Code that controlled at the time, which stated that "[a] person commits an unlawful act if the person . . . knowingly makes or causes to be made a claim under the Medicaid program for . . . a product that has been adulterated . . . ." Act of Mar. 30, 2015, 84th Leg., R.S., ch. 1, § 4.180, 2015 Tex. Gen. Laws 1, 1881 (amended 2023) (current version at Tex. Hum. Res. Code § 36.002(7)(C)).

In response, Mehta filed a special appearance and motion to dismiss for lack of personal jurisdiction specifically with regard to the TMFPA claim directed at him. The trial court denied Mehta's special appearance without entering findings of fact or conclusions of law. Mehta then filed this interlocutory appeal challenging the trial court's decision.

SPECIAL APPEARANCE

## I.      Standard of Review

A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) exercising jurisdiction does not violate federal and state constitutional due process

guarantees. *LG Chem Am., Inc. v. Morgan,* 670 S.W.3d 341, 346 (Tex. 2023) (citing Tex. Civ. Prac. & Rem. Code §§ 17.041–.045); *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). The requirements of the long-arm statute "are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Personal jurisdiction "is consistent with due process 'when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.'" *Kelly*, 301 S.W.3d at 657 (quoting *Moki Mac*, 221 S.W.3d at 575).

The nonresident defendant's forum-state contacts can give rise to two types of personal jurisdiction—specific jurisdiction and general jurisdiction. *Moki Mac*, 221 S.W.3d at 575. The State contends that only specific jurisdiction applies here.

To establish specific personal jurisdiction over a nonresident defendant, a plaintiff must demonstrate that the defendant possesses minimum contacts with the forum state to the extent that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *LG Chem Am.,* 670 S.W.3d at 347. "This specific-jurisdiction analysis involves 'two co-equal components': purposeful availment and relatedness." *Id.* (quoting *Moki Mac*, 221 S.W.3d at 579). First, the defendant must have "purposefully availed itself of the privilege of conducting activities in the forum state." *Id.* Second, the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum. *Id.* There must be an appropriate "nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579. Texas Supreme Court precedent requires that the plaintiff demonstrate a "substantial connection" between the defendant's contacts and the operative facts of the litigation. *LG Chem Am.*, 670 S.W.3d at 347; *Moki Mac*, 221 S.W.3d at 585.

Under Rule 120a(3) of the Texas Rules of Civil Procedure, "[t]he court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Although the pleadings "are not dispositive" of this inquiry, the "additional evidence merely supports or undermines the allegations in the pleadings." *Kelly*, 301 S.W.3d at 658 n.4. For a special appearance, "[t]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of the long-arm statute." *LG Chem Am*, 670 S.W.3d at 346. The nonresident "defendant then bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.*

"Whether a court has personal jurisdiction over a party is a question of law that we review de novo, although the court may have to resolve questions of fact." *Id*. When the trial court does not issue findings of fact and conclusions of law, as is the case here, "we presume all factual disputes were resolved in favor of the trial court's decision unless they are challenged on appeal." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). But "[w]hen the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Regarding legal sufficiency, "the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish personal jurisdiction." *LG Chem Am*, 670 S.W.3d at 346. This challenge fails "if there is more than a scintilla of evidence to support the finding . . . ." *Marchand*, 83 S.W.3d at 795. Regarding factual sufficiency, "[i]f the parties present conflicting

5

evidence that raises a fact issue, we will resolve the dispute by upholding the trial court's determination." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 n.4 (Tex. 2016). Whether undisputed jurisdictional facts establish jurisdiction is a question of law. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018).

## II. Analysis

In his two issues on appeal, Mehta argues that the trial court abused its discretion in denying his special appearance because the State failed to allege that Mehta personally had sufficient purposeful contacts with the State of Texas to meet the minimum contacts requirement for its TMFPA claim. According to Mehta, any contacts he had with Texas were too attenuated and do not pertain to the operative facts of the litigation or the claims asserted against him. The State responds that it has sufficiently pleaded—and proffered evidence—that Mehta personally availed himself to Texas, that such conduct pertains to the operative facts, and that personal jurisdiction over Mehta comports with traditional notions of fair play and substantial justice.

Evaluating the pleadings and the evidence, the State's allegations and proffered evidence do not satisfy its burden to show Mehta personally established minimum contacts with the State of Texas. The State's allegations and evidence only show contacts with Texas that are too attenuated to constitute purposeful availment with Texas.[2]

Minimum contacts are sufficient for personal jurisdiction when a defendant "purposefully avails" itself of the privilege of conducting activities within the forum state. *Moki Mac*, 221 S.W.3d at 575; *see M & F Worldwide Corp. v. Pepsi-Cola*

---

[2] As resolution of this issue is dispositive of this appeal, we do not address the fiduciary shield doctrine issue and the "arise from or relate to" and "fair play and substantial justice" elements of the minimum contacts test.

*Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 886 (Tex. 2017). Purposeful availment has three components. First, "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person." *Moki Mac*, 221 S.W.3d at 575; *M&F Worldwide*, 512 S.W.3d at 889 ("[T]he 'unilateral activity of another party or a third person' cannot amount to purposeful availment by the specially appearing defendant." (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005))). Second, "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Moki Mac*, 221 S.W.3d at 575. Third, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Id.* (quoting *Michiana*, 168 S.W.3d at 785).

Physical presence in the forum, although relevant, "is not a prerequisite to jurisdiction." *See Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71 (Tex. 2016) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). At "its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 152 (Tex. 2013).

The State's pleadings and proffered evidence do not meet this standard. The State's Petition contains only one allegation of Mehta's conduct in Texas for its TMFPA claim in the "Causes of Action" section:

> Defendants Tris, Pfizer, and Mehta knowingly made or caused to be made claims under the Medicaid program for a product, Quillivant, that was adulterated. Specifically, Tris, under the direction of CEO Mehta, knowingly adulterated Quillivant and released it to Pfizer with the understanding that Pfizer would promote Quillivant to Texas physicians, including Texas Medicaid physicians, and would distribute Quillivant in Texas, ultimately leading to its use by Texas Medicaid patients.

7

The Petition otherwise only makes allegations of Mehta's role and decisions in the drug testing process for Quillivant. The State further provides six exhibits spanning five years of Mehta's contacts, which it attached to its response to Mehta's special appearance before the trial court below and summarizes in its briefing before this Court.

## A. The State's Petition and Most of Its Proffered Evidence Do Not Show Mehta Had Contacts with Texas

As an initial matter, the State's allegations in its Petition do not involve any contact by Mehta with Texas. The Petition only makes allegations regarding Mehta's role in the manufacturing process for Quillivant and *Pfizer's* marketing it to Texas. As stated above, "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person." *Moki Mac*, 221 S.W.3d at 575.

As to the manufacturing process, the State does not allege that the manufacturing process occurred in Texas. Mehta in his briefing in fact alleges that manufacturing occurred in New Jersey—Tris's principal place of business. Mehta's decisions about drug manufacturing outside of Texas are not contacts with Texas. Similarly, the Petition's allegations about Mehta with respect to Pfizer's marketing—that Mehta "released" Quillivant to Pfizer "with the understanding that Pfizer would promote Quillivant to Texas physicians, including Texas Medicaid physicians, and would distribute Quillivant in Texas, ultimately leading to its use by Texas Medicaid patients"—do not establish any contact between Mehta and Texas. Rather, the contacts are between Texas and Pfizer. The Petition makes clear that it was Pfizer who "promoted" Quillivant to Texas physicians and "distributed" Quillivant in Texas. The fact that Mehta released Quillivant to Pfizer with the "understanding" Pfizer would perform these acts is irrelevant because only Mehta's personal conduct with Texas—and not the acts of a third party—are pertinent to the minimum contacts analysis. *Moki Mac*, 221 S.W.3d at 575. And it is undisputed that

8

Tris signed a contract giving Pfizer the right to sell Quillivant.

Turning to the exhibits, the documents the State provides as evidence of Mehta's contacts with Texas—exhibits 2, 4, and 5—are also wanting. Exhibit 2 is an e-mail providing corporate minutes of a joint Pfizer and Tris meeting Mehta attended where Quillivant and Texas Medicaid were discussed. The State does not allege this meeting took place in Texas and the meeting minutes themselves do not describe any action taken by Mehta. Mere attendance at a corporate meeting not even alleged to have occurred in Texas does not constitute a contact with Texas.[3]

Exhibit 4 involves an e-mail chain where Mehta asks Tris personnel if they can acquire Pfizer's Texas Medicaid rebate information that Texas released, including Quillivant rebate information. An internal e-mail within Tris, which is headquartered in New Jersey, seeking information about Medicaid rates of a product being sold in Texas by another company, Pfizer, is not a contact with Texas. If it were, then any officer of an out-of-state business looking to see how a product is priced in Texas would be subject to suit in Texas.

Exhibit 5 is an e-mail from Tris personnel to Mehta seeking a conference call about a bid proposal to place Quillivant on what the State alleges is the Texas Medicaid PDL. This e-mail does not establish that a conference call occurred but only that it was planned. Nothing in the e-mail indicates Mehta personally submitted the bid proposal or was otherwise involved in negotiations with HHSC or any other Texas entity to place Quillivant on the Texas Medicaid PDL.

The State objects that Mehta's orders to make changes in the testing process for manufacturing Quillivant led to Quillivant being adulterated. Because Mehta understood through the Tris marketing agreement with Pfizer that the adulterated

---

[3] Mehta alleges the meeting took place at Pfizer's corporate headquarters in New York, which the State does not dispute.

Quillivant would reach Texas, including patients on Texas Medicaid, he availed himself to Texas through his involvement in manufacturing of Quillivant. As noted above, the State does not allege that the manufacturing process occurred in Texas. Moreover, merely "understanding" that a drug would reach Texas through a third party is not conduct by Mehta himself—which is the only conduct that matters here for purposes of the personal jurisdiction analysis. *Moki Mac*, 221 S.W.3d at 575 ("[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person.").

### B. The State's Remaining Proffered Evidence of Mehta's Contacts is Too Attenuated to Texas to Show Purposeful Availment

Unlike the previously mentioned exhibits, 1, 3, and 6 do provide evidence of some direct contacts with Texas by Mehta. Namely, they document conversations Mehta had with a few Texas physicians on several business matters pertaining to Quillivant. Exhibit 1 is a July 2013 e-mail chain that involves a Tris employee informing a Pfizer employee that "[Mehta] and I had just spoke to a doc in Texas and he mentioned something about Medicaid. Would like your thoughts." The first e-mail in the chain from Pfizer had the subject line "QXR Weekly Tracker – TRx and Withdrawals.xls."

The State alleges in its brief, and Mehta does not dispute, that this e-mail chain concerned a Texas Medicaid issue a Texas physician had with Quillivant. Exhibit 3 includes an e-mail chain where Mehta recounted exchanges he had in November 2016 with another Texas physician, who worked at a clinic and used Quillivant, asking him why he did not purchase any of Tris's drugs and what Tris could do better to market their drugs. Exhibit 6 is an October 2018 e-mail chain where a Texas physician contacted Mehta about a Qullivant representative who had been missing for several weeks, Mehta seeking to allay the physician's concerns, and the physician giving feedback and advice to Mehta on promoting Quillivant and another one of

Tris's drugs.

These contacts with Texas physicians, however, are far too "attenuated" to amount to purposeful availment in Texas. *Moki Mac*, 221 S.W.3d at 577. This evidence indicates that Mehta contacted only three Texas physicians over the span of five years from July 2013 to October 2018. For Mehta to be subject to personal jurisdiction in Texas his contacts must be "such that [he] could reasonably anticipate being haled into court there." *Moncrief*, 414 S.W.3d at 152. Mehta could not reasonably anticipate being haled into court in Texas for talking to three Texas physicians over the span of five years.

The State responds that Mehta's personally reaching out to Texas-based doctors and clinics was part of a campaign to bring Quillivant to market in Texas and, as CEO of Tris, Mehta had an outsized influence in this campaign. According to the State, this fact, paired with Mehta's targeting of Texas Medicaid, purposefully availed Mehta to Texas.

We disagree for three reasons. First, the Petition does not allege Mehta personally campaigned to bring Quillivant to the Texas market—only that Pfizer did. Second, as noted above, the proffered evidence showing Mehta's contacts with three Texas physicians over a span of five years is too attenuated to constitute purposeful availment. *Moki Mac*, 221 S.W.3d at 575. Third, as the Petition itself alleges, Texas Medicaid is not an entity but rather a program administered by HHSC. Neither the Petition nor the evidence provided by the State indicates Mehta contacted HHSC. Exhibits 2, 4, and 5 involve internal conversations within Tris and Pfizer where Texas Medicaid is discussed, but HHSC is not a part of these conversations. Nothing in these exhibits or in the other exhibits proffered indicates that Mehta personally contacted HHSC about Texas Medicaid or for any other reason.

For these reasons, the State has failed to meet its burden to sufficiently plead

11

and provide evidence that Mehta is subject to personal jurisdiction in Texas for the State's TMFPA claim.

## CONCLUSION

We reverse the trial court's order denying Mehta's verified special appearance and render judgment dismissing the State's TMFPA claim against Mehta for lack of personal jurisdiction.

<u>/s/ April Farris</u>
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.

12